fend, and was then duly tried thereon. Thus, if we should treat the return to the writ of habeas corpus as traversed, and the return to the writ of certiorari as the evidence adduced on the hearing thereon, still it appears that the magistrate had jurisdiction of the offense of the relator, had authority to try him and impose the sentence, and there was some evidence tending to show guilt, so that within all the authorities the writs should have been dismissed; and whether all of these things are essential to jurisdiction, and may be inquired into on habeas corpus after conviction, perhaps, should not, in view of the conflicting decisions, be determined upon this appeal. If the offense was committed in the presence of a police officer, he might have arrested the relator without any warrant, and we know of no law in such case requiring that a formal information be filed before the prisoner is arraigned.

It follows that the order should be reversed and the writs dismissed. All concur.

(40 Misc. Rep. 672.)

NATIONAL PARK BANK v. AMERICAN EXCH. NAT. BANK.

(Supreme Court, Appellate Term.  March, 1903.)

1. CHECKS—INDORSEMENT—AUTHORITY TO INDORSE—EVIDENCE.

In an action on two checks payable to and indorsed by two insurance corporations, the question being whether M. had authority to make the indorsements, which purported to be made by a firm as agents, evidence examined, and *held* insufficient to show that the indorsements were unauthorized.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by the National Park Bank of New York against the American Exchange National Bank. Judgment for plaintiff, and defendant appeals.  Reversed.

Argued before FREEDMAN, P. J., and GIEGERICH and GILDERSLEEVE, JJ.

Butler, Notman, Joline & Mynderse (William H. Fain and Lewis H. Freedman, of counsel), for appellant.

Louis F. Doyle, for respondent.

GIEGERICH, J.  The action was brought to recover two sums of $40 each, being the respective amounts of two checks, one to the order of the Lincoln Insurance & Banking Company, and the other to the order of the Commercial Fire Insurance Company, paid by the plaintiff to the defendant through the clearing house upon indorsements alleged to have been fraudulent or unauthorized. The indorsement in each case took the following form:  First the name of the corporation stamped across the back of the check, then the written words, "Rothschild & Co. Agts.," followed by the written signature "Henry Y. Miller," and finally these words stamped on, "Pay Mechanics' Trust Company or order, Henry Y. Miller." The question is whether Miller had authority to make the first two indorsements. Evidence on behalf of the plaintiff was offered in the

form of depositions taken without the state. The deposition of Jacob Rothschild showed that the firm of Rothschild & Co., doing business in Philadelphia, and of which he was a member, was the general agent of both the insurance companies in question, the one a corporation of Indiana and the other of Delaware; that this firm issued the policies and collected the premiums thereon for both companies under a written authority, the terms of which he refused to disclose on· the ground that it was of a private nature; that his firm had authorized no one except one Charles C. Block to indorse the firm name or the name of either corporation on any checks made payable to the respective corporations; that he had one partner, James R. Wilson; that Henry Y. Miller "bore no relation whatever" to him or to his firm or to either corporation. The evidence contained in the other depositions need not now be referred to. Miller, called on behalf of the defendant, testified that he was a partner in the firm of Rothschild & Wilson; that the copartnership business was the control of insurance companies; that the firm owned both the corporations in question, which had no assets, and the officers of which were their clerks; that he represented the companies in New York and New Jersey; that 25 per cent. of the premiums received was paid to canvassers and brokers and for expenses, and the balance, after paying losses, was divided between him and Rothschild and Wilson; that he collected the premiums on the·policies issued by or through him, indorsed such premium checks, put them through his bank, and, after paying the commissions and other expenses, gave or sent the balance to Rothschild. There was also put in evidence a letter from Rothschild & Co. to C. S. Atkinson & Co. of New York, dated June 13, 1901, more than a month before the transactions in suit, returning a check to the order of the Commercial Fire Insurance Company, with emphatic directions to send it to Miller, through whom the policy in payment of the premium on which the check was given had been obtained. Rothschild claimed that this was done as a mere matter of bookkeeping, so that Miller's account could be more easily kept, and that the check should have later been forwarded by Miller to his firm; whereas Miller testified that this was only in the regular course of their dealing, and a single transaction of a thousand where he had received and indorsed and put through his own bank such checks. This check, which bore indorsements similar to one of those in suit, was offc·   in evidence, but excluded on the objection that it was immaterial and irrelevant. Other similar attempts were made to put in evidence facts that would tend to show an authority in Miller to make such indorsements by reason of an established course of dealing. Miller's claim that he was a partner in the firm was corroborated by the testimony of three apparently disinterested witnesses, attorneys of this city, who testified that Rothschild admitted in their presence and Miller's that the latter was his partner.

In view of Miller's charge that the corporations were mere forms or names through which Rothschild & Co. did business, and the refusal of Jacob Rothschild to make full disclosure of the relations existing between the firm and these companies on the ground that

such relations were of a "private nature," and of his sweeping denial that Miller "bore any relation whatever" to him or his firm or to either of the companies, although the undisputed facts show that he certainly did bear an important relation, and in view of the corroboration Miller received from different sources, I am constrained to take a contrary view of the weight of evidence from that of the justice below. Since a new trial must be had, it may be of some service to point out that, though the exact extent of the authority of Rothschild & Co. is not disclosed, still it is shown that they had power to authorize others to indorse checks with the companies' names, as in the case of Block, testified to by Rothschild. That being the fact, such authority could be conferred upon Miller by a long course of dealing, as well as by express permission. Marine Bank v. Clements, 31 N. Y. 33; Hammond v. Varian, 54 N. Y. 398. It will, therefore, be proper and desirable, the testimony being so conflicting, that upon the new trial a full exposition be made of the established course of business between Miller and Rothschild & Co. and the companies, if they exist in a proper sense, and he had any dealings with them. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide event.

GILDERSLEEVE, J., concurs. FREEDMAN, P. J., taking no part.