MONTGOMERY WARD & CO. v. SOUTH DAKOTA RETAIL MERCHANTS' & HARDWARE DEALERS' ASS'N et al.

(Circuit Court, D. South Dakota. February 1, 1907.)

**1.** INJUNCTION—TEMPORARY INJUNCTION.

Where the only object of a suit in equity is a permanent injunction, a temporary injunction will not issue, if the court is of the opinion that there is no probability that the complainant will succeed on the merits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 309.]

**2.** CONSPIRACY—BUSINESS COMPETITION.

The right to do business free from interference, except from lawful competition, includes the right to buy as well as to sell.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 7–11.]

**3.** SAME—COMBINATION OF RETAILERS.

An association of retail dealers could lawfully agree among themselves that they would not purchase merchandise from wholesalers and jobbers who sold to catalogue or mail order houses, and to inform each other as to what wholesalers and jobbers did sell to such houses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 10.]

**4.** SAME.

That a combination of retail dealers in merchandise interfered with complainant's right to buy goods by persuasion or peaceable means exerted

against the sellers did not constitute unfair competition, intimidation, or coercion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 10.]

5. INJUNCTION—CONSPIRACY—FREEDOM OF PRESS.

Under Const. S. D. art. 6, § 5, providing that every person may freely speak, write, and publish on all subjects, being responsible for the abuse of the right, the publisher of a commercial newspaper was not subject to injunction to restrain him from publishing articles in support of proceedings of a retail dealers' association against catalogue and mail order houses; the publisher being only responsible in an action at law for damages or a criminal proceeding by indictment or information.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 172, 174.]

On Motion for Temporary Injunction.

George P. Merrick and Rogde & Winans, for complainant.
Grigsby & Grigsby, for defendants other than E. J. Mannix.
Bailey & Voorhees, for defendant E. J. Mannix.

CARLAND, District Judge. By the bill filed in this action, complainant seeks to perpetually enjoin the defendants from demanding, urging, soliciting, or asking any wholesaler, jobber, manufacturer, or any one else to sever business dealings or relations with the said complainant, or to cease selling merchandise of any kind to the complainant; from threatening, coercing, or intimidating any manufacturer, jobber, wholesaler, or any one else concerning business dealings of any kind with the said complainant; from preparing, printing, publishing, mailing, posting, distributing, or uttering any threats of injury, or intimidations to any corporation, firm, association, or person regarding its or their business relations to the complainant; from preparing, publishing, posting, making, or delivering any communication in the interest of or in furtherance of any blacklist or boycott against any manufacturer, jobber, wholesaler, or any one else—the effect or purpose of which is to restrain trade, or calculated to prevent and impair free, full, and unrestricted competition or trade of all persons with the complainant.

By the motion now submitted to the court complainant asks that a temporary injunction be granted, enjoining the defendants from doing the acts above mentioned while this suit is pending. Where the only object of a suit in equity is a permanent injunction, a temporary injunction will not issue where the court is of the opinion that there is no probability that the complainant will succeed on the merits. In the consideration of this motion it will be necessary to consider the case against the members of the South Dakota Retail Merchants' & Hardware Dealers' Association hereafter in this opinion called retail dealers and the case against the defendant Mannix, as publisher of the Commercial News, separately, as these defendants do not appear from the evidence to be so connected as to make the case of one binding upon the other. The case made by the evidence submitted to the court against the retail dealers by complainant is substantially as follows:

Complainant is, and has been for more than 30 years past, actively

engaged in the business of retailing and dealing in general merchandise, including hardware, groceries, dry goods, farm implements, machinery, clothing, furniture, drugs, chemicals, and many other kinds and varieties of merchandise with its headquarters and principal place of business in the city of Chicago, in the state of Illinois, and conducts said business throughout the United States, including the state of South Dakota, by means of a certain business method commonly known and described as the "mail order" or "catalogue method." The complainant originated, instituted, and developed the mail order or catalogue system or method of doing business, the chief element of which consists in dealing directly with the customer or consumer by means of placing in his hands a printed catalogue containing a description of the articles of merchandise offered for sale and the price thereof.

The South Dakota Retail Merchants' & Hardware Dealers' Association is a voluntary association organized for the purpose of correcting trade abuses, to develop the mercantile profession and to co-operate with other organizations having like objects. The retail dealers held their annual meeting at Mitchell, January 23, 1906, and soon after said meeting there was, with the consent and knowledge of its principal officers, issued and sent to a great number of wholesalers and jobbers throughout the United States who were not members of said association the following circular letter:

| A. F. Grimm, President.     L. S. Tyler, Secretary. | Directors: |
|---|---|
| THE SOUTH DAKOTA RETAIL MERCHANTS' & HARDWARE DEALERS' ASSOCIATION. | P. F. Wickhem, Alexandria, L. N. Crill, Elk Point, A. R. McMillan, Conde. Andrew E. Lee, Vermillion, W. H. Bunting, Albee, T. H. Courshon, Delmont. |

Sioux Falls, S. D, March 1, 1906.

The South Dakota Retail Merchants in Convention assembled at Mitchell, So. Dak., January 23, 24, 25, 1906, expressed strong sentiments and were unanimous on the subject: Relating to the selling of merchandise by the jobber and manufacturer to the catalogue or mail order houses. That it was unfair treatment on the part of the wholesaler towards the retailer. The retail merchant of South Dakota feels that the cause of the catalogue house has been advanced by the wholesaler, inasmuch as the stock of the mail order house is carried by the wholesaler. The retail merchants have suffered in consequence of this arrangement.

Will you not act with the retail merchants? Do you at the present time encourage and help the catalogue house business? Will you not refuse to sell to the mail order house, and will you confine your trade to the legitimate retail dealer?

Any suggestion for co-operation for our mutual interests of both the wholesaler and retailer we would as a body of merchants be glad to receive and consider.

This letter is indorsed by the board of directors as above named and sent out under their instruction.

Yours truly,                                                        L. S. Tyler, Secretary.

That on July 14, 1906, there was issued and sent to the members of said voluntary association a letter in words and figures as follows:

A. F. Grimm, President.          L. S. Tyler, Secretary.          Directors:

THE SOUTH DAKOTA RETAIL
MERCHANTS' & HARDWARE DEALERS'
ASSOCIATION.

P. F. Wickhem,
  Alexandria,
L. N. Crill,
  Elk Point,
A. R. McMillan,
  Conde,
Andrew E. Lee,
  Vermillion,
W. H. Bunting,
  Albee,
T. H. Courshon,
  Delmont.

Sioux Falls, S. D., July 14, 1906.

Dear Sir: The attached list comprises those jobbers that refuse to answer in any way the letter that was sent out by the Retail Merchants' & Hardware Dealers' Association at your request in March, asking them if they would act with the retail trade and not with the catalogue houses.

In these houses refusing to answer our letters and ignoring the merchants, through their association, the secretary cannot come to any other conclusion than that they prefer the business of the catalogue houses as against retailers of this state. It would seem that, in the course of business, a jobber that depended on the retail trade for his support might have courtesy enough to reply to a fair question, even though he might not be in accord with it and preferred to trade with the catalogue houses. Hang this over your desk for reference.

Yours truly,                                    L. S. Tyler, Secretary.
The South Dakota Retail Merchants' & Hardware Dealers' Association.

The defendant E. J. Mannix is the editor and publisher of the Commercial News, a monthly magazine published at the city of Sioux Falls, in the interest of the retail merchants of South Dakota and the adjacent states, as well as the interest of the consumers of said state. That said Commercial News has published from time to time the official transactions of the South Dakota Retail Merchants' & Hardware Dealers' Association and has at all times advocated, according to its views, the interests of the retail dealers as against complainant and other mail order houses, and it is the intention of the editor of said publication to continue to so advocate said interest as long as he may desire to do so. Said publication, however, has never been the official paper or organ of the South Dakota Retail Merchants' & Hardware Dealers' Association in such a sense as would make said association or its members responsible for the utterances of said publisher. The defendant E. J. Mannix ceased to be a member of said association January 1, 1907. The Commercial News published the letters hereinbefore referred to and signed by L. S. Tyler, secretary, and accompanied said publication with editorial comment, strongly supporting the position taken by said voluntary association. That by reason of the letters sent out as aforesaid, and by reason of the publications contained in said Commercial News, some wholesalers and jobbers have declined, and continue to decline, to furnish to complainant goods or merchandise manufactured by them, so that said complainant is unable to obtain or procure very many articles of merchandise which it has hitherto bought, sold, and

distributed to its customers, which has resulted in injury and impairment of complainant's business, and that complainant's damage as claimed in the bill exceeds, exclusive of interest and costs, the sum of $2,000. It is alleged in the bill that the acts of said voluntary association and its officials, together with the publications contained in the Commercial News, have all been committed in pursuance of a conspiracy between the members of said voluntary association and said defendant E. J. Mannix to injure and boycott the business of the complainant.

It also fairly appears from the evidence that the retail dealers have agreed among themselves that they will not purchase any merchandise from wholesalers and jobbers who sell to catalogue or mail order houses. It does not appear, however, that said retail dealers intend to do anything in connection with the matters in controversy different than they have done already. It must be remembered that the retail dealers and complainant are competitors in business, and that the retail dealers have committed the acts, shown by the evidence, for the purpose of protecting their own interests so that the retail dealers do not stand in the position that a combination of persons would who had no interest of their own to protect. It is impossible to reconcile all the decisions bearing upon the power and authority of a court of equity to restrain by injunction combinations of persons having for their object an interference with the business of another. So far as the acts done by the combination are concerned, each case must be judged by its own facts. All of the cases similar to the one at bar have arisen where a combination of persons have sought to interfere with the free flow of trade of another by acting upon the free will of his customers. It is believed that this is the first case where complaint has been made of interference with the free will of the persons from whom one purchases the merchandise which he sells. But the right to do business, free from interference except from lawful competition, includes the right to buy as well as to sell, although it is quite probable that the damage from interference in the former case would be much less than in the latter. An examination and consideration, however, of the numerous cases bearing upon the question at issue, has convinced the court that, before a court will enjoin the commission of acts by a combination of persons which interfere with the business of another, the court must find that the acts are unlawful. For damage arising from the commission of lawful acts, the law affords no remedy. The facts in evidence on this hearing show that the retail dealers have agreed among themselves that they will not purchase merchandise from wholesalers and jobbers who sell to catalogue or mail order houses; that they have corresponded with jobbers and wholesalers stating that the retail dealers were opposed to said wholesalers and jobbers selling to catalogue or mail order houses, and have requested the former not to sell to the latter. Are these acts of the retail dealers unlawful? Do they show unfair trade competition? Is persuasion unlawful when considered with reference to the facts of this case, or, in other words, is persuasion unfair competition? Upon the answer to these questions depends complainant's right to a temporary injunction.

150 F.—27

That the retail dealers have a lawful right to agree among themselves that they will not purchase merchandise from wholesalers and jobbers who sell to catalogue or mail order houses cannot be denied, and it necessarily follows that they have the right to inform each other as to what wholesalers and jobbers do sell to catalogue or mail order houses. The question in this case is: What may they do, in addition, to influence the wholesalers and jobbers not to sell to catalogue houses?

It must be conceded that complainant has the right to transact and carry on its business free from intimidation or coercion, that this is a property right, and that a combination to interfere with this right otherwise than in fair competition must show justification. The American cases, however, when carefully considered, show that the great weight of authority in the United States is in favor of the proposition that it is not unfair competition, intimidation, or coercion for a combination to interfere with this right by persuasion or any peaceable means. National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Fletcher Co. v. Association of Machinists (N. J. Ch.) 55 Atl. 1077; Foster v. Retail Clerk's Association (Sup.) 78 N. Y. Supp. 860; Reynolds v. Everett, 144 N. Y. 189, 39 N. E. 72; Pomeroy's Equity Jurisprudence, vol. 6, § 595; Bohn Manufacturing Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319.

It thus appears that the retail dealers have done nothing, nor threatened to do anything, which is actionable. Whatever the defendant Mannix has done has been as publisher of the Commercial News, and not as a member of any combination. As such publisher he is entitled to invoke the constitutional guaranty contained in section 5, art. 6, of the Constitution of South Dakota, which, so far as pertinent, is as follows "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." In the jurisprudence of the United States there is no remedy for the abuse of this right conferred by the Constitution, except an action at law for damages or a criminal proceeding by indictment or information. Marlin F. A. Company v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310; Frances v. Flinn, 118 U. S. 385, 6 Sup. Ct. 1148, 30 L. Ed. 165; Kidd v. Horry (C. C.) 28 Fed. 773; Brandreth v. Lance, 8 P. (N. Y.) 24; Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69, 19 Am. Rep. 310; Singer Mfg. Co. v. Domestic S. M. Co., 49 Ga. 70, 15 Am. Rep. 674; Townshend on Slander and Libel, § 417a; Odger on Libel and Slander, § 13; Owen v. Partridge (Sup.) 83 N. Y. Supp. 249.

It results, from what has been said in behalf of the retail dealers, that defendant Mannix is not a member of an unlawful combination, and, so far as he is concerned as publisher, this court cannot assume the duty of censor and lay down rules for his guidance. He has the right to publish. If he abuses it, the complainant has the same remedy as any other citizen, no less and no more. It seems to be conceded that this court may not enjoin the publication of libels, but it is insisted that it may enjoin publications which aid any combination having for its purpose an unlawful injury to one's business. There are two reasons why an injunction should not issue to restrain the publications of articles, by the defendant Mannix, which, though not libelous, have a tendency

to injure the business of complainant, and they are: First, this court cannot determine in advance, by any rule which it might promulgate for the guidance of the defendant Mannix, as to what would be a mere libel, and what would come within the prohibition of the injunction; second, without reflecting in any way upon the character or influence of the Commercial News, it may be said that the court cannot find that any article published by it on its own behalf alone would unlawfully intimidate any one, or compel any jobber or wholesaler to refuse to sell to catalogue or mail order houses against their will.

The motion for a temporary injunction must be denied.