## AMERICAN MALTING CO. v. KEITEL.

(Circuit Court of Appeals, Second Circuit. November 20, 1913.)

No. 155.

**1. JUDGMENT (§ 648*)—RES JUDICATA—CRIMINAL CONVICTION.**

A conviction of defendant for criminal libel in 1911 because of a circular dated January 6, 1910, and put out by him was not res judicata in a civil suit based on alleged libelous statements made in subsequent circulars.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1309, 1310; Dec. Dig. § 648.*]

**2. INJUNCTION (§ 98*)—EQUITY JURISDICTION OVER TORTS—LIBEL.**

Equity has no jurisdiction, in the absence of statute, to restrain the future publication and issuance of alleged libelous circulars, though the false statement may injure complainant in his business or as to his property, in the absence of acts of conspiracy, intimidation, or coercion.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 169–171; Dec. Dig. § 98.*]

**3. INJUNCTION (§ 63*)—GROUNDS OF RELIEF—BREACH OF CONTRACT.**

Equity has jurisdiction to restrain a third person from inducing another to break a contract with complainant for the purchase and sale of merchandise.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 63.*]

**4. INJUNCTION (§ 176*)—PRELIMINARY INJUNCTION—CONTINUANCE.**

Where, in a suit to restrain defendant from issuing printed circulars alleged to contain matter tending to injure complainant's business, credit, and property, it appeared that complainant was designated by name only in rare instances in the circulars, and defendant by sworn affidavit denied that the statements referred to complainant, he would not be harmed by the continuance of an interlocutory injunction until final hearing, subject to a provision that it should not apply to future circulars containing a provision in terms that the aspersions were not directed against complainant.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 389, 395; Dec. Dig. § 176.*]

**5. INJUNCTION (§ 176*) — PRELIMINARY INJUNCTION — RELIEF TO ONE NOT A PARTY.**

Where complainant sought an injunction restraining defendant's publication and issuance of certain circulars containing matter injurious to complainant's business, it was error to add a provision to an interlocutory injunction that it should not apply to future circulars, provided defendant incorporated therein a provision that the charges did not apply to another corporation that was not a party to the suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 389, 395; Dec. Dig. § 176.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the American Malting Company against Adolph Keitel. From an order granting an injunction pendente lite, defendant appeals. Modified and affirmed.

Ralph B. Ittelson, of New York City, for appellant.

O'Gorman, Battle & Vandiver, of New York City (Almuth C. Vandiver, Isaac H. Levy, and J. Joseph Lilly, all of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff seeks to restrain the defendant from issuing printed circulars alleged to contain matters which tend greatly to injure the business, credit, and property of the plaintiff. The American Malting Company is a corporation organized under the laws of the state of New Jersey. Its capital stock is $30,000,000. It does a business of from $7,000,000 to $12,000,000 a year; the amount of its business varying with the price of barley. It is said to be the largest manufacturer of malt in the United States. The defendant is a citizen and resident of the state of New York and holds no stock in the complainant company. The circulars complained of began to make their appearance in 1907 and since July, 1912, have been issued at intervals of a week. They have been mailed to brewers and consumers of malt throughout the United States, as well as to banks and to complainant's stockholders. The corporate name of the plaintiff is mentioned in only a few of the circulars. They contain references, however, to the "gold-brick swindle," the "gold-brick pool," "trust," "malt combine," which plaintiff says were intended to be understood to refer to it, and it alleges that they are so understood by the persons to whom they were sent. The defendant denies that the circulars show that the complainant was mentioned to its damage or that it can be said that the plaintiff in fact was intended. The plaintiff claims that defendant is persistently attempting maliciously to interfere with its existing contracts, is seeking maliciously to induce parties to refrain from dealing with plaintiff and to resist the payment of their debts to it, and is endeavoring maliciously to destroy its business credit and property.

[1] The defendant was convicted of criminal libel in 1911 because of a circular dated January 6, 1910, which he issued. But that conviction is not res adjudicata as to statements made in the subsequent circulars. And we have no exact knowledge as to what the statements were in the January 6, 1910, circular which the jury found to be libelous. The subsequent circulars are unquestionably full of libels on various persons if the allegations they contain are false. They are not libelous so far as the allegations are true. The campaign he is evidently engaged in is against the combination of malters which he alleges is illegal. He charges the combination with keeping up the price of malt by false statements and artifices and with inducing brewers to contract for future delivery at unreasonable prices. He advises brewers not to buy for future delivery and those who have purchased in the season of 1911–1912 to repudiate their contracts. He charges the American Malt Corporation with trying to get the stockholders of the American Malting Company to exchange their stock by means of false representations and also perhaps that the officers of the malting company have made false statements in circulars about its financial condition. The American Malt Corporation is a separate organization distinct from the American Malting Company, and is also organized under the laws of New Jersey, and at the time of this suit held 98 per cent. of the capital stock of the American Malting Company. It is alleged that the American Malt Corporation does not own or control the stock of any other corporation.

The court below awarded a very drastic injunction pendente lite, restraining the publication of the circulars. It, however, added a clause to the effect that, if defendant would accompany each future circular with the statement that his charges were not directed against this particular plaintiff, he might continue issuing them. As one ground of his defense is that the charges are not against the plaintiff, his purpose would not be thwarted by embodying such a statement in each subsequent circular. But he appeals to this court, and it becomes necessary to consider whether the court below had jurisdiction of the subject-matter. If it had not, the preliminary injunction should be vacated and the bill dismissed. This makes it necessary to inquire what power the courts of equity possess to restrain the publication of libels.

[2] Courts of equity like courts of law follow established precedents. They cannot usurp powers they do not possess. We recognize the fact that equity is an elastic system; that its procedure is progressive and is capable of accommodating itself to the changing emergencies and demands of the age. If it were otherwise it could not so well have met the needs of our civilization. At the same time courts are not to usurp powers they do not possess. In a country which has constitutional guaranties of freedom of speech and of the press and of trial by jury, courts of equity should be slow to assume that they possess a power to deal with the publication of libels that the High Court of Chancery in England disclaimed.

Lord Chancellor Eldon in 1818, speaking of the powers of the equity courts, said:

"The doctrines of this court ought to be as well settled and made as uniform almost as those of the common law, laying down fixed principles, but taking care that they are [not] to be applied according to the circumstances of each case. I cannot agree that the doctrines of this court are to be changed with every succeeding judge. Nothing would inflict on me greater pain, in quitting this place, than the recollection that I had done anything to justify the reproach that the equity of this court varies like the chancellor's foot." Gee v. Pritchard, 2 Swanton, 428.

Lord Chancellor Hardwicke in 1742 (Huggonson's Case, 2 Atk. 469) declared that:

"Notwithstanding this should be a libel, yet, unless it is a contempt of the court, I have no cognizance of it, for, whether it is a libel against the public or private persons, the only method is to proceed at law."

It should be said, however, that in that case equity was asked to punish a past tort, not to restrain a future one. Lord Ellenborough in 1810, in a common-law court (Du Bost v. Beresford, 2 Camp. 511), said, in speaking of a picture, that, if it was a libel upon the persons introduced into it, "upon an application to the Lord Chancellor he would have granted an injunction against its exhibition." But this dictum is known to have excited much astonishment in the minds of all practitioners in the court of chancery. Thus matters stood in England until 1869, when Vice Chancellor Malins granted injunctions against libels. Springhead Spinning Co. v. Riley, L. R. 6 Eq. 551; Dixon v. Holden, L. R. 13 Eq. 355. These decisions were, however, speedily overruled in 1875 in Prudential Assurance Co. v. Knotts, L. R. 10

Ch. App. 142. In Collard v. Marshall (1892) 1 Ch. 571, Chitty, J., said that, before the Judiciary Act, equity had no power to try a libel. In Monson v. Tussands Limited (1894) 12 B. 671, Lopes, L. J., said:

"Prior to the Common-Law Procedure Act 1854, no court could grant any injunction in a case of libel. The Court of Chancery could grant no injunction in such a case, because it could not try a libel. Neither could courts of common law until the Common-Law Procedure Act of 1854, because they had no power to grant injunctions. Whether they had power to grant interlocutory injunctions after 1854, I think doubtful. As a matter of practice they never did."

The Common-Law Procedure Act of 1854 conferred on the English courts of common law the power to grant injunctions in all personal actions of contract or tort, with no limitation as to defamation. And by the Judicature Act of 1873 a power was conferred upon the Chancery Division of the High Court to grant injunctions in cases of libel. But prior to these acts neither courts of law nor courts of equity could issue injunctions in England in such cases. The English law courts began to exercise such jurisdiction in 1878, and about the same time the equity courts began in like manner to exercise theirs. But it is understood that they interfere only in the "clearest cases," and especially by interlocutory injunctions. See Bonnard v. Perryman (1891) Ch. 269 (C. A.); Kerr on Injunctions, 5, 6. For 150 years it has been understood in England that equity had no jurisdiction to enjoin a libel, and the power of the courts of that country to do so rests upon statute.

In the United States a like view of the matter has been taken. In Pomeroy's Equity Jurisprudence, vol. 6, § 629, it is laid down that:

"Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States and was formerly the rule in England. The present rule in England rests on statute."

In High on Injunctions (4th Ed.) § 1015, that writer states that the doctrine which seems most in accord with the principles governing the jurisdiction of equity by way of injunction is that, the preventive jurisdiction being limited to the protection of property rights which are remediless by the usual course of procedure at law, courts of equity will not restrain the publication of libels or works of a libelous nature, even though such publications are calculated to injure the credit, business, or character of the person aggrieved, and that he will be left to pursue his remedy at law. In a case in the Supreme Court of the United States (1885), Francis v. Flynn, 118 U. S. 385, 56 Sup. Ct. 1148, 30 L. Ed. 165, Mr. Justice Field said:

"If the publications in the newspapers are false and injurious, he can prosecute the publishers for libel. If a court of equity could interfere and use its remedy of injunction in such cases, it would draw to itself the greater part of the litigation properly belonging to courts of law."

In 1886 the question arose in the Circuit Court for the Third Circuit in Kidd v. Horry, 28 Fed. 773. An injunction was asked to restrain the defendants from publishing certain circular letters concerning the business of the complainants. The injunction was refused. The opinion was by Mr. Justice Bradley, who said:

"But neither the statute law of this country nor any well-considered judgment of the courts has introduced this new branch of equity into our jurisprudence. There may be a case or two looking that way, but none that we deem of sufficient authority to justify us in assuming the jurisdiction. * * * We do not regard the contrary decision in Croft v. Richardson, 59 How. Prac. [N. Y.] 356, as of sufficient authority to counteract these cases or to disturb what we consider to be the well-established law on the subject. That law clearly is that the court of chancery will not interfere, by injunction, to restrain the publication of a libel. * * * We do not think that the existence of malice in publishing a libel or uttering slanderous words can make any difference in the jurisdiction of the court. Malice is charged in almost every case of libel, and no cases of authority can be found, we think, independent of statute, in which the power to issue an injunction to restrain a libel or slanderous words has ever been maintained, whether malice was charged or not. Charges of slander are peculiarly adapted to and require trial by jury; and exercising, as we do, authority under a system of government and law which by a fundamental article secures the right of trial by jury in all cases at common law, and which by express statute declares that suits in equity shall not be sustained in any case where a plain, adequate, and complete remedy may be had at law, as has always heretofore been considered the case in causes of libel and slander, we do not think that we should be justified in extending the remedy of injunction to such cases."

In 1886 the question came before the Circuit Court of the First Circuit (Baltimore Car-Wheel Co. v. Bemis, 29 Fed. 95), and the injunction was denied; the court saying:

"There is no jurisdiction in a court of equity to enjoin libel on the rights of title of the complainant. We understand this to be the settled law both in England and in this country, in the absence of statutory provisions conferring such jurisdiction."

In 1909 the question arose in the Fifth Circuit (Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co. [C. C.] 171 Fed. 553), and the court held that equity had no jurisdiction to enjoin a libel or slander defaming the credit and business standing of an individual or corporation. The court said:

"The difficulties in the way of affording such relief are unsurmountable. They grow alike out of constitutional provisions and want of jurisdiction in the court of equity."

In 1907 the question arose in the Eighth Circuit (Montgomery Ward & Co. v. South Dakota Retail Merchants' & Hardware Dealers' Assoc. [C. C.] 150 Fed. 413), and the court refused the injunction, saying:

"In the jurisprudence of the United States there is no remedy for the abuse of this right (to freely speak, write, and publish) conferred by the Constitution, except an action at law for damages or a criminal proceeding by indictment or information."

In 1912 the question was before a District Court in Missouri (Vassar College v. Loose-Wiles Biscuit Co., 197 Fed. 982). The bill was dismissed; the court saying:

"In this country a court of equity is without jurisdiction to restrain the publication of a libel."

The state courts in a number of cases have held that the jurisdiction of equity did not extend to libels and have refused injunctions to restrain their publication. Boston Diatite Co. v. Florence Mfg. Co.,

114 Mass. 69, 19 Am. Rep. 310 (1873); Marlin Firearms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310 (1902); Baltimore Life Ins. Co. v. Gleisner, 202 Pa. 386, 51 Atl. 1024 (1902); Mayer v. Journeyman Stone-Cutters' Assoc., 47 N. J. Eq. 519, 20 Atl. 492 (1890).

In Flint v. Hutchinson Smoke Burner Co., 110 Mo. 492, 19 S. W. 804, 16 L. R. A. 243, 33 Am. St. Rep. 476, the court held that the question of libel should be determined by a jury in an action at law, and that after a verdict for the plaintiff he might have an injunction to restrain the further publication of that which the jury found to be actionable libel or slander.

The fact that the false statements may injure the plaintiff in his business or as to his property does not alone constitute a sufficient ground for the issuance of an injunction. The party wronged has an adequate remedy at law.

In all that has been said we have not lost sight of the fact that the courts have sometimes issued injunctions to restrain the publication of false statements injurious to business or property. The cases in which such a jurisdiction has been assumed have been those which have involved conspiracy, intimidation, or coercion. In 22 Cyc. 900, it is laid down:

"A court of equity has no jurisdiction to restrain a mere libel or slander. Nor does the fact that the false statement may injure plaintiff in his business or as to his property constitute a sufficient ground for an injunction, in the absence of acts of conspiracy, intimidation, or coercion."

And see Beck v. Ry. Teamsters' Union, 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421; Casey v. Cincinnati Typographical Union (C. C.) 45 Fed. 135, 12 L. R. A. 193. To this class belongs the case of Emack v. Kane (C. C.) 34 Fed. 46 (1888), where District Judge Blodgett issued an injunction to restrain one from issuing circulars threatening to bring suits for infringements against all customers dealing in a competitor's patented article. The gravamen of that case was the attempted intimidation of the complainant's customers by threatening them with suits which the defendants never intended to prosecute. The doctrine announced in that case has been followed in numerous cases and by this court in Adriance, Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163 (1903). But the complainant does not in terms charge the defendant with being engaged in any conspiracy or in any attempt to intimidate or coerce the complainant or its customers. And the alleged false statements and objectionable matter contained in the circulars do not amount to coercion or intimidation in law, either of the complainant or its customers. The customers may be deceived by false statements, but they are left free to form their own judgment and make their own choice. They are not coerced or intimidated or frightened. The circulars contain no threats of violence to the property of the complainant. He threatens to bring no suits either against the complainant or its customers. It is true that, where proper grounds exist for assuming jurisdiction, equity does not refuse jurisdiction because there is incidentally involved the restraining of a libel. A court of equity may restrain

a boycott if the boycott is sought to be accomplished by the publication of circulars or printed matter; such a publication may be restrained without a violation of constitutional rights. That was made clear by the decision of the Supreme Court of the United States in Gompers v. Buck Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

It is said that a man has a property right in his business and that an injunction may issue to protect that right against fraud and misrepresentation, notwithstanding the fact that the fraud and misrepresentation may be contained in a libelous publication. That was, as we understand it, the very question which was submitted to the English Court of Appeals in Chancery in 1875 in Prudential Assurance Co. v. Knott, supra. The defendant had published a pamphlet which the plaintiff corporation claimed falsely represented it as being managed with reckless extravagance and as being in a state of insolvency and unable to fulfill its engagements, whereas the company was in an exceedingly prosperous and thriving condition, abundantly solvent and earning large profits, and was managed without extravagance. The bill further charged that the continued publication of the pamphlet would be very injurious to the company's credit and reputation. It accordingly prayed that its publication might be restrained. The injunction was refused. Lord Cairns said:

"It is attempted to give a color to the application by saying that these are libelous publications which will injure property, and then, when that proposition is further defined, it is said that the business of the company, the good will of the company, is property; that the company in its trade will be injured; and that therefore the interference of the court is asked for the protection of property. But, with regard to nine out of ten libels, the same thing might be said. The cases in which actions are brought for libel are usually cases where things are written of men or corporations which have an effect upon their character and upon their trade or business or their character as connected with trade or business; but no case can be produced in which, in these circumstances, the Court of Chancery has interfered. Not merely is there no authority for this application, but the books afford repeated instances of the refusal to exercise jurisdiction."

He then quotes from the decision of Vice Chancellor Malins in Dixon v. Holden, supra, this passage:

"In the decision I arrive at, I beg to be understood as laying down that this court has jurisdiction to prevent the publication of any letter, advertisement, or other document which, if permitted to go on, would have the effect of destroying the property of another person, whether that consists of tangible or intangible property, whether it consists of money or reputation."

And says:

"I am unable to accede to these general propositions: They appear to me to be at variance with the settled practice and principles of this court. * * *"

Lord Justice James and Lord Justice Mellish stated that they were of the same opinion.

But while the courts of equity have no jurisdiction to restrain the publication of a libel as such, and while we do not think the facts in the case take it out of the general rule because of any conspiracy, intimidation, or coercion or because of any incidental injury to property

rights arising merely from the publication of libelous matter, a court of equity may nevertheless possess the power to restrain the defendant from an unjustifiable and wrongful interference with the plaintiff's contracts, if it shall appear that he is engaged in such an undertaking. See Joyce on Injunctions, § 440a.

[3] It is an actionable wrong for a third person without justification to induce a party to a contract to break his agreement. This was decided in England in the leading case of Lumley v. Gye, 2 El. & Bl. 216, where the contract was one of hiring. The judges in that case were not agreed whether the principle was applicable to contracts other than those of hiring. But the House of Lords in Quinn v. Leathem, (1901) App. Cas. 495, thought the principle applicable to all contracts, although the contract in question was one of employment. The Supreme Court of the United States in Angle v. Chicago & St. Paul Ry. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55, held it actionable for a third person to induce another to break his contract. And see Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 394, 31 Sup. Ct. 376, 55 L. Ed. 502. That the principle is applicable to all contracts is stated to be the law in the decisions of Massachusetts (Beekman v. Marsters, 195 Mass. 205, 210, 80 N. E. 817, 11 L. R. A. [N. S.] 201, 122 Am. St. Rep. 232, 11 Ann. Cas. 332), and in those of some of the other state courts. In Jackson v. Stanfield, 137 Ind. 592, 36 N. E. 345, 37 N. E. 14, 23 L. R. A. 588, and in Morgan v. Andrews, 107 Mich. 33, 64 N. W. 869, it is held to be a tort for a third person willfully to induce a breach of contract of sale. In California and Kentucky it is held not actionable to induce a breach of contract which is not one of employment. Boyson v. Thorn, 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233; Chambers v. Baldwin, 91 Ky. 121, 15 S. W. 57, 11 L. R. A. 545, 34 Am. St. Rep. 165. See Page on Contracts, vol. 3, § 1329.

The federal courts seem to have inclined to regard such wrongs as actionable and have in a number of cases issued injunctions to prevent a third party from inducing one of the parties to a contract to violate it; the contract not being one of employment. Sperry & Hutchinson Co. v. Mechanics' Clothing Co. (C. C.) 128 Fed. 800; Miles Medical Co. v. Goldthwaite (C. C.) 133 Fed. 794; Dr. Miles Medical Co. v. Platt (C. C.) 142 Fed. 606; Hartman v. Park (C. C.) 145 Fed. 358; Wells & Richardson Co. v. Abraham (C. C.) 146 Fed. 190; Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co. (C. C.) 171 Fed. 553. In the last case an injunction issued restraining defendant from inducing complainant's customers from breaking their contracts with complainant by agreeing to indemnify them against liability for damages in so doing.

In American Law Book Co. v. Edward Thompson Co., 41 Misc. Rep. 396, 84 N. Y. Supp. 225, an injunction was asked to restrain the defendant from attempting to induce the subscribers to the plaintiff's cyclopedias to decline to receive and pay for the books; the defendant agreeing to indemnify any of plaintiff's subscribers against claims for damages for their breach of contract and to pay the expenses of the defense of any actions brought against the subscribers for the breach of such contracts. The court thought there was no adequate remedy

at law and issued an injunction. Mr. Justice Bischoff in the course of his opinion said:

"The defendant admits the making of the agreements in question but asserts that the plaintiff has no remedy in equity upon the allegations of the complaint; the contention being that the plaintiff has his remedy at law for each contract broken, that the party to that contract has the right to break it and pay damages, and that what the party can do another person may ask him to do without restraint by injunction. It is also. argued that the cases in which an injunction has been granted to prevent the solicitation of a breach of contract are found to have involved only contracts for personal services, and that there is no precedent for such an injunction as the plaintiff seeks. If there be no exact precedent for this injunction, none is needed. The complaint avers, and the affidavits support the averment, that the defendant is engaged in an attempt to obtain business which the plaintiff has secured, having no regard to fairness of competition but with resort to trick and device.

"Whether the subscribers are in each instance actually led by the defendant's misrepresentations to break the particular contracts is not important and is not an essential averment of the complaint. Intentional false statements, made with a view to obstruct the plaintiff's business and to divert it to the defendant, are charged, and the solicitation of the subscriber's breach of contract is but a more active step in the same scheme of unfair competition. * * *

"That an action for damages would not afford an adequate remedy is obvious. The loss of business and the injury to business reputation resulting from the defendant's acts of obstruction, and from the consequent litigation between the plaintiff and its delinquent subscribers, could not be estimated nor proven with any degree of certainty for the purposes of a recovery; nor could the plaintiff properly estimate the additional burden of the future litigation with subscribers, whose defense would (as it is to be inferred from the past) be conducted by the defendant at great pains and expense, bearing no relation to the amount of the claim, but solely in the interest of obstruction and for advertising purposes. The invasion of a legal right being apparent, and the inadequacy of relief at law being clear, a case for injunctive relief is made out; and, indeed, direct authority for an injunction upon a very similar state of facts is not wanting. Stoddard v. Key, 62 How. Prac. [N. Y.] 137."

In Flaccus v. Smith, 199 Pa. 128, 48 Atl. 894, 54 L. R. A. 640, 85 Am. St. Rep. 779, an injunction issued to a third person, an officer of a labor union, restraining him from enticing the plaintiff's apprentices to break their contract of employment; they having agreed at the time of their employment not to become members of a union while working for the plaintiff. The court below had found as a fact that, if the interference was allowed to continue, it would ruin the plaintiff's business.

We fail to discover any satisfactory distinction between an attempt to induce employés to break a contract of employment and an attempt to induce customers to break their business contracts for the purchase or sale of goods. In the case before us the plaintiff claims that, if the contracts for the delivery of malt had been broken as the defendant advised, there would have resulted a loss to it of over a million dollars. A man's business may be as effectively ruined by inducing his customers to break their contracts as by inducing his employés to leave his employment. If it appears that this defendant without justification and by means of fraudulent misrepresentations is seeking to induce plaintiff's customers to break their contracts, he is seeking by fraud to ruin the plaintiff's business. If the plaintiff's allegations are true, the defendant is engaged in a guerilla warfare on its business. It is ab-

horrent to one's sense of justice that this wrong should be permitted to continue until the mischief has been accomplished and the business ruined, as might be the case if there be no remedy except through an action at law for damages.

[4] The question, however, remains whether the preliminary injunction was properly granted on the facts as they appear in the record. The rule is that preliminary injunctions will not issue except in the clearest cases. Odgers on Libel and Slander (5th Ed.) 426. In Bonnard v. Perryman (1891) 2 Ch. 269, the defendant in his affidavit swore that the statements complained of were true, and the court refused an interlocutory injunction. It said:

"We cannot feel sure that the defense of justification is one which, on the facts which may be before them, the jury may find to be wholly unfounded."

In the present case the defendant denies the plaintiff's allegations; and the supporting affidavits presented on behalf of the plaintiff seem too indefinite to justify an interlocutory injunction. The defendant denies, under oath, that the circulars which he issued contained other than facts. He swears that they were published without malice, in good faith, and in order to serve the interests of the consumers of malt. The bill is verified by plaintiff's secretary, and an issue is raised between the two. The plaintiff has presented, in addition to the affidavit of its secretary, the affidavits of three other persons. These affidavits go to show that there are false statements in the circulars. They fail to show that the false statements relate to the complainant. Mr. Loewer's affidavit states that the circulars contained mistaken statements concerning malt market conditions. Mr. Bermuth's affidavit refers to "false statements" but does not specify that any statements which are false relate to the plaintiff. There are numerous statements in the circulars reflecting upon persons other than plaintiff. Some of these statements, if false, are libelous upon the individuals named, but that does not help plaintiff's case. Mr. McCarthy's affidavit refers to the "false representations" and attributes to them a loss of business on the part of the plaintiff. He refers to "the false information conveyed in the circulars issued by the defendant Keitel with reference to the plaintiff." This is not saying that "the false information" related to the plaintiff, only that it is contained in "the circulars issued by the defendant Keitel with reference to the plaintiff:" It may have related to the American Malt Corporation, which is a distinct organization and is mentioned by name, or to individuals who are also assailed by name. The plaintiff is mentioned by name only in rare instances. But the court below embodied in the injunction a clause to the effect that, if the defendant would accompany each future circular with the statement that his statements were not directed against the plaintiff, he might continue his publications. Since one ground of his defense is that his statements are not directed against the plaintiff, we cannot see that he will be in any way harmed if the interlocutory injunction continues in force until final hearing. To do so will preserve the present status, as he contends it is, until at the final hearing on the pleadings and proof it can be determined what the real facts of the case may be.

[5] The disclaimer, however, which the District Judge required is too broad. It requires the defendant to disclaim any charges against the American Malt Corporation. As that corporation is not a party to the suit and therefore is in no position to ask for relief, the injunction order should be modified by omitting any reference to it.

The cause is remanded to the court below, with directions to modify the injunction order by omitting reference to the American Malt Corporation, and to its officers and directors as such, and to the management and business of that corporation, as well as all other matters except advices to the plaintiff's customers to break their contracts.