## OIL CONSERVATION ENGINEERING CO. v. BROOKS ENGINEERING CO.

### No. 5716.

Circuit Court of Appeals, Sixth Circuit.

Oct. 8, 1931.

J. F. Oberlin, of Cleveland, Ohio (Fay, Oberlin & Fay, of Cleveland, Ohio, on the brief), for appellant.

Charles P. Hine, of Cleveland, Ohio, and N. S. Amstutz, of Valparaiso, Ind. (Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

Appellee, the Brooks Engineering Company, as plaintiff, filed this bill against the Oil Conservation Engineering Company, as defendant, complaining that defendant was threatening, but not bringing, infringement suits, and was making against plaintiff unfounded claims of infringement and of unfair competition, alleging that these things constituted unfair competition by defendant Oil Company against the plaintiff Brooks Company, and asking injunction and damages. Defendant answered with general denials, and counterclaimed, alleging that plaintiff was infringing one trade-mark and two patents which belonged to defendant, and was guilty of unfair competition, and, in turn, asking injunction and damages against plaintiff. The court below entered a decree for plaintiff on the original bill and dismissed the counterclaim.

About 1921, Mr. Brooks was active in organizing the defendant Oil Company and became its president and manager. It sold a general line of appliances, particularly intended as accessories for oil storage tanks. The leading items were winches, cable sheave brackets, and hole covers. Some of these, and several other items as well, were the subject of patent applications in the name of Brooks and others, but assigned to defendant. Under Brooks' direction, the defendant became the owner of the Edwards patent, No. 1,435,154, dated November 14, 1922, covering a cable sheave bracket. It had broad claims,

and Brooks, acting for defendant, made claims and sent notices of infringement against competitors. In 1924, he left the defendant's service and started a competing business, as the Brooks Engineering Company, on the Pacific Coast. He offered for sale the same general line of articles. Some of them were replicas of defendant's, even to inconsequential details, and some of his advertising cuts were reproductions of defendant's. He took with him, or took later, parts of some of the files of correspondence which he had conducted for defendant. He had complete knowledge of defendant's business and of existing or prospective customers; and, obviously, he intended to take over for his new company as much as he could of the business which he had built up for defendant. These things, generally speaking, he had a right to do; but they were sure to provoke bitterness of competition, and they invited reprisals. His later complaint that defendant's competition was unfair must be appraised against this background.

We take up, first, defendant's counterclaim of trade-mark infringement and unfair competition. Its registered trade-mark, embossed upon or cut into its metal articles, is "OCECO." Plaintiff displays in similar fashion on its similar articles "BECO." There is considerable resemblance in looks and in sound; resemblance no closer has been held infringing (see review in Garrett v. Schmidt (Judge Westenhaver, D. C.) 256 F. 943, 946), but it has come to be common to use the initials of a corporate name for a trade-mark, and in some degree "BECO" is merely the use by the plaintiff of its own name; there was nothing fraudulent or unlawful about the selection of this corporate name; and since plaintiff thus has a sort of prima facie, if not primary, right to use this mark, we think comparison of the two must be made on a basis less liberal to defendant than might otherwise be permitted. The defendant, having chosen for its trade-mark a condensation of its corporate name, cannot complain of similar action by the plaintiff, applied to its entirely nonsimilar corporate name, unless the result is such close resemblance as to make confusion among customers fairly probable rather than merely possible. With two such trade-marks, the distinction between strict trade-mark infringement and general unfair competition becomes less sharp; and, turning to the latter subject, we find in plaintiff's conduct, though more especially for the first year or so, such an adoption of precise forms of articles and of ad-

vertising cuts, such a measure of similarity in the marks, and such an absence of particular efforts by plaintiff to distinguish its goods, that if the competing articles were of the type sold over the counter to purchasers not particularly informed, a finding of unfair competition might well be justified. However, sales were not made in that way. They were chiefly made to purchasing agents of large companies and from personal solicitation by Mr. Brooks, through visits or correspondence. These buyers doubtless fully understood that plaintiff was in business in competition with defendant, and that they were buying plaintiff's goods and not defendant's. There would very likely be occasional small sales or reorders in which there might be confusion between the companies; but, upon the whole, we think the evidence insufficient to require a finding of trademark infringement or of unfair competition, as alleged by the defendant against the plaintiff; yet we quite agree with the master's conclusion in his report that "plaintiff's conduct escapes being unfair by a narrow margin."

Plaintiff undoubtedly infringes the Edwards patent, under which Brooks had made claims and threats while he represented defendant. Claim 1 of that patent is quoted in the margin.[1] The only element claimed to distinguish this combination from earlier ones clearly shown is the stuffing box through which the cable passed out of the roof of the oil tank. It was necessary for safety's sake that this cable opening through the roof should be practically gas-tight, and the earlier patented art does not show such a stuffing box in combination with bracket and pulleys, all arranged as a convenient fixture ready to be attached to the tank; but a stuffing box is so common an expedient wherever needed, and is shown in the earlier art in positions so closely analogous, that its use in this particular form of bracket cannot import patentability.

So much of the decree below as found this patent invalid must therefore be affirmed.

The defendant next claims that plaintiff infringes the Calhoun patent, No. 1,628,028, dated May 10, 1927, upon a "collar and cover for tank gauge holes." The construction is apparent enough from claim 2, which is quoted in the margin.[2] This device is not precisely anticipated. Its only supposedly new features are that the descending cover fits down over the outside of the collar instead of serving as a plug to close the inside of the collar, and that instead of two meeting supplementary conical surfaces, one of the beveled edges represents a section of a sphere rather than of a cone. Thus there is a line contact between the two, even if the descending cover is slightly out of alignment. The device has been well received and is probably operative to make a more perfect closure than the older forms would be certain to give; but it seems clear to us that there can be no invention in reversing the position of inward and outward bevels as between the collar and the cover, nor yet in making one of the meeting bevels of a spherical contour. That the interior of a cone and the outside of a sphere will make a perfect line contact at whatever angle the cone approaches, must be familiar to every mechanic. The common ball valve is a typical instance. We cannot think that the structure called for by claim 2 of this Calhoun patent indicates anything beyond mechanical skill. Claims 1, 3, and 7 are somewhat broader, and so even more clearly invalid. The dismissal of the counterclaim as to these claims sued upon is affirmed.

We cannot agree with the conclusion below that the defendant had been guilty of any conduct properly classed as unfair competition. In a general way, the situation was the not uncommon one where the older manufacturer has patents which seem to cover the competitive article. The patents are presumedly valid. Litigation is expensive and to be avoided, if possible. Notices to the competitor that he is infringing, and perhaps to the manufacturer for the competitor, and to a limited number of his chief customers, are the normal procedure and not to be condemned, when characterized by good faith. If not well based, they are in the nature of libels or slanders of title; possibly they are analogous to a cloud upon the competitor's title to his business and to his output. A court of equity has no jurisdiction to enjoin

---

[1] "In combination with an oil storage tank and the swing pipe supported therein, a plate supported on the roof of the tank, pulleys supported by the plate, a stuffing box forming a part of the plate, a cable adapted to pass through the stuffing box and adapted to move over the pulleys, said cable having connection with the swing pipe, and a windlass for moving the cable over the pulleys to adjust the swing pipe."

[2] "In a cover for tank holes, the combination of a collar adapted to be secured to the tank and having a beveled seating edge, a cover of inverted cup shape pivotally mounted on said collar, said mounting being loose so as to allow said cover to be self centering, a beveled seating ring rigidly mounted in said cover and adapted to rest on said collar edge, one of said meeting seat surfaces being conical and the other formed as a portion of a sphere to obtain a line contact there-between."

a mere slander or libel. See American Malting Co. v. Keitel (C. C. A. 2) 209 F. 351–355; Kidd v. Horry (C. C.) 28 F. 773. It is only when such slanders are both in bad faith —that is, malicious—and are working destruction of property or property rights, that equity will interfere; otherwise, the remedy is at law. In the federal courts the first case recognizing any power to enjoin claims of infringement was Judge Blodgett's opinion in Emack v. Kane (C. C.) 34 F. 46, and it has continued the leading case. It fully recognizes that bad faith and malice must appear before any such power exists; and this limitation has been repeatedly affirmed. There have been, in recent years, occasional reported opinions which seem somewhat to disregard this essential basis; but in so far as they may bear that construction, we cannot think they are well decided.[3] We discussed this subject most recently in Alliance Co. v. De Vilbiss, 41 F.(2d) 668, 670, and need not repeat what was there said.

 Examining the facts upon this record, we find no convincing evidence of the bad faith or fraud of defendant. The Edwards and Calhoun patents were both presumably valid. They were both infringed by plaintiff. The objection that they did not involve invention as compared with the older art is not one which the patentee was bound to know to be good. Some parts of the basis of that objection involve earlier uses of which defendant did not know. It is not to be condemned for claiming infringement and giving reasonable notice or notices of its claims.

The specific things which plaintiff says indicate bad faith merit attention. One is that defendant did not bring suit until by way of counterclaim in this case. Defendant was located at Cleveland. Plaintiff's infringement was mainly upon the Pacific Coast; its pecuniary responsibility does not appear. Defendant had no opportunity to bring suit against plaintiff in the Cleveland district or circuit. It was under no initial and immediate obligation to go across the country for that purpose. It did not engage in any general campaign of threats against plaintiff's customers. The total delay, from the time Brooks' competition became substantial until the counterclaim was filed, was less than two years. One in plaintiff's position, under such circumstances, is not without remedy. He may tender to the patentee a suitable opportunity to bring an infringement suit at the patentee's home, or in such district as the patentee desires; if that is declined without good reason and the claims and threats are continued, the necessary bad faith begins to appear.

Another complaint is that the notices of infringement did not specify what patents were infringed. The answer says that this was unnecessary, because Brooks knew all about it. This is certainly a good answer as to the Edwards patent. It is not so good as to the Calhoun, which was only a pending application when Brooks left the defendant, and which was not issued until just before suit brought. There is nothing to indicate that the application was not prosecuted diligently. The particulars of pending applications cannot well be disclosed without inviting interferences. It is not seen that the failure to name the Edwards patent, or to say that a patent was about to be issued upon the covers, or to specify that the claims of infringement would be confined to these two articles, give rise to any particular prejudice to plaintiff, as distinguished from the prejudice inherent in a more accurate or limited notice.[4]

It is next said that the first notice specified infringement also of a flame extinguisher, upon which device defendant had no patent. The fact is that four applications pertaining to fire extinguishing had been turned over by Brooks to defendant when he organized it, and that seemingly no one of these finally resulted in a patent. Here again, it is not apparent how plaintiff was prejudiced by the excessive claim.

---

[3] E. g.—Racine Co. v. Dittgen (C. C. A. 7) 171 F. 631; Maytag Co. v. Meadows Co. (C. C. A. 7) 35 F. (2d) 403–408. The leading cases in the Second and Third circuits are Adriance Co. v. National Co., 121 F. 827, and Farquhar Co. v. National Co., 102 F. 714, 49 L. R. A. 755. Both expressly affirm the right to send infringement notices to the manufacturer and his customers, unless there is bad faith. See, also, Computing Co. v. National Co. (C. C. Sage, D. J.) 79 F. 962, 966; Virtue v. Creamery Co. (C. C. A. 8) 179 F. 115, 120; Everett Piano Co. v. Maus (C. C. A. 6) 200 F. 718; American Malting Co. v. Keitel (C. C. A. 2) 209 F. 351, 355; Clip Bar Co. v. Steel Co. (D. C. E. D., Pa.) 209 F. 874, 875; Johns-Manville Co. v. Lovell Co. (C. C. A. 2) 212 F. 923; Celotex Co. v. Insulite Co. (D. C., Minn.) 39 F.(2d) 213, 218.

[4] One instance of plaintiff's unfounded claims of unfairness may be specified: One letter making claims of infringement and written and signed by Fay, Oberlin & Fay, well known to Brooks to be defendant's counsel, referred to "our patents," without naming their client. Plaintiff claims it supposed the letter referred to patents belonging to these attorneys, and that it was put to expense in looking up Patent Office records in trying to find what these patents might be. The original bill even made these attorneys parties defendant, and asked disclosure as to what patents they owned. Asserting such a ground for the claim of unfairness does not tend to strengthen plaintiff's case.

The other items of evidence urged do not, separately or cumulatively, convince us that defendant's conduct should be deemed as dominantly in bad faith. It cannot be characterized by some occasional instance in the course of a business contest between such competitors. It must be judged as a whole.

So much of the decree as finds for plaintiff on the original bill should be reversed, and the bill dismissed. The record is remanded for decrees in accordance with this opinion.