## RADIO CORPORATION OF AMERICA v. RADIO AUDION CO.

(District Court, D. Delaware. November 4, 1922.)

No. 439.

**1. Principal and agent ⊗⇒23(2)—Agency may be inferred from circumstances.**
Agency may be inferred from the acts, conduct, and relations of the parties, without proof of any express appointment.

**2. Injunction ⊗⇒228—Principal liable for violation of injunction by agents.**
Complainant was enjoined from further distribution of a circular found to contain misleading and deceptive statements, to the injury of defendant, and requiring it to file a list of distributees that they might be notified. Though complainant did not disclose the fact at the time, it subsequently appeared that it had mailed 20 copies of the circular to each jobber and wholesale dealer in its product "for ordinary trade pur-

poses," and that the recipients had distributed them to dealers. *Held* that, in so doing, they acted as agents for complainant, and that their continued distribution after the order or the failure of complainant to file a list of such distributees, or state the facts as to its method of distribution, if distribution was made before, were violations of the order which constituted a comtempt.

In Equity. Suit by the Radio Corporation of America against the Radio Audion Company. On motion by defendant to have complainant adjudged in contempt. Motion granted.

J. Edgar Bull and John W. Peters, both of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Ward, Gray & Neary, of Wilmington, Del., and Samuel E. Darby, Jr., of New York City, for defendant.

MORRIS, District Judge. The defendant in the suit of Radio Corporation of America against Radio Audion Company seeks to have the plaintiff adjudged in contempt of court. The suit was instituted to obtain relief for alleged infringement of Fleming patent, No. 803,684. A preliminary injunction was issued therein restraining and enjoining the defendant from making and selling its device, known as an "audion," for use as a detector. The use of the audion as an amplifier, or as a generator of high frequency electrical oscillations, was not enjoined. 278 Fed. 628. Thereafter the plaintiff sent out a circular letter, dated July 1, 1922, entitled "Information Regarding Radio Patent Situation."

The defendant, charging that the letter contained misstatements to the detriment of the defendant and was injurious to the business of the defendant, filed an application in the main suit for injunctive and other relief with respect thereto. Hearing was had and a finding made that copies of the letter had been "sent out and distributed" by the plaintiff to distributors, jobbers, and dealers in radio vacuum tubes, and that statements in the letter were improper, misleading and deceptive with respect to the Radio Audion Company. It was thereupon, on July 26th last, ordered:

"(1) That the said Radio Corporation of America, its officers, agents, servants, employees, and attorneys, and those in active concert or participating with them, be and they hereby are severally enjoined, pending final decision of this cause, from issuing other copies of its said letter of July 1, 1922, or other letters of like character.

"(2) That the said Radio Corporation of America, within 10 days from the date hereof, file with the clerk of this court a list of the names and addresses of each and every person, firm, partnership, or corporation to whom it has mailed or otherwise sent a copy of the said letter of July 1, 1922, the said list, however, not to be filed in the case or made a part of the record, and to be used only for the information of the court, unless hereafter otherwise ordered.

"(3) That the clerk of this court promptly after the filing of such list mail a copy of this order to each of said persons, firms, partnerships or corporations."

Within the time specified in the order the plaintiff filed with the clerk a list of 265 names. A copy of the order was sent by the clerk to each person named in the list.

On October 7th the defendant filed its present petition, wherein it charged, in effect, that the plaintiff issued copies of the letter after the entry of the order, and omitted from the list filed with the clerk the names of many persons to whom the letter of July 1st had been sent by the plaintiff, and that by such disobedience of the order the defendant had been substantially injured. The main prayers of the petition are that the plaintiff be adjudged in contempt; that the plaintiff be directed to pay to the defendant the costs, expenses, and disbursements, including counsel fees, incurred by the defendant as a result of plaintiff's disobedience of the order; and that such fines and penalties be imposed upon the plaintiff as to the court may seem just. The application has been heard upon the petition, the answer thereto, and affidavits and exhibits filed by the respective parties.

The evidence discloses that not one copy only, but approximately 20 copies, of the circular letter were mailed by the plaintiff to each of the 265 persons named in the list filed with the clerk. This fact was not disclosed by the plaintiff prior to the making of the order of July 26th, or in the paper filed by it with the clerk. The evidence likewise discloses that the persons to whom the letters were thus mailed by the plaintiff were wholesale dealers or jobbers in radio apparatus, to whom the plaintiff usually sold its products. It further appears from the evidence that copies of the letter, on the stationery of the plaintiff, were received by many dealers whose names were not supplied to the clerk by the plaintiff. The evidence warrants the conclusion that at least some of the copies of the letter sent by the plaintiff to the wholesale dealers in its products were, to the detriment of the defendant, distributed by the plaintiff's wholesalers, or some of them, to other dealers in radio vacuum tubes. It does not appear whether such distribution was made before or after July 26th, the date of the order.

The defendant contends that if such distribution was made after July 26th the plaintiff thereby violated the first paragraph of the order, and if before July 26th that the plaintiff disobeyed the second paragraph of the order, in not filing with the clerk the names of such distributees. The precise question thus presented for determination is whether, under the facts here present, the letters distributed by the plaintiff's wholesalers were, within contemplation of the order, "mailed or otherwise sent" to such distributees by the plaintiff. If such distribution resulted from an independent and unauthorized act of the wholesalers, it was not the act of the plaintiff. If, however, the wholesalers, in making distribution of the letters, were acting as the agents of the plaintiff, then the letters received by the ultimate distributees were within contemplation of the order sent to them by the plaintiff.

[1, 2] Agency may be inferred from the acts, conduct, and relations of the parties, without proof of any express appointment. In fact direct proof of agency frequently is not available, and in most of the ordinary transactions of business the agency is either conferred verbally or is implied from circumstances. There is no direct proof that the relation of principal and agent existed between the plaintiff and the persons receiving the letters directly from the plaintiff. Does the evidence disclose circumstances from which that relation should be in-

ferred? Some of the persons receiving the letters immediately from the plaintiff deal in radio apparatus of the plaintiff not only, but in that of others as well. With respect to plaintiff's products the only relation existing between the plaintiff and any of the persons receiving the letters in a direct manner from the plaintiff is that of vendor and vendee. The circular letters sent to them were not accompanied or followed by express instructions or requests with respect to distribution or otherwise. Nevertheless approximately 20 copies of the letter were mailed to each of the 265 persons named on the list filed with the clerk. What disposition did the plaintiff intend the recipients to make of so many copies? It says:

"It is the usual trade practice of manufacturers, including ourselves, to furnish wholesale dealers and jobbers with duplicate copies of circulars, form letters, price lists, catalogues, etc. This is because the needs of the wholesale dealers and jobbers require them, so that they can distribute them among their salesmen and office force, and have them on hand for ordinary trade purposes. In the case of this circular the usual practice was followed, but in no instance was more than 20 copies sent to any one wholesale dealer or jobber."

But will this answer stand analysis? Some of the persons receiving the letters immediately from the plaintiff deal in radio products of the plaintiff only. What use were the salesmen and office force of such persons to make of the letters? What were the "ordinary trade purposes" for which such persons were to have the letters on hand? The answers to these questions are made plain by the letter itself. It says in part:

"The Radio Corporation of America, therefore, issues this notice to manufacturers, distributors, jobbers, and dealers, to cease the manufacture, or the sale, or distribution of vacuum tubes which infringe the above-mentioned patents. Unauthorized distributing or selling of a patented device, wholly independent of manufacturing, is just as much an infringement of the patent as the manufacturing itself, and any seller is separately liable to suits for accounting for damages or profits in addition to an injunction. For their own protection, the distributors, jobbers, and dealers, who without authority of the holders of the above patents, may yet be offering for sale vacuum tubes for radio work, should require a guaranty from the manufacturer from whom they purchase these devices, holding them harmless in case of damage suits arising through their distribution and sale of vacuum tubes which infringe the above-mentioned patents. Vacuum tubes are now available through the distributors of the Radio Corporation of America in large quantities, which are sold under the above-mentioned patents, and can be readily identified by the trade-names and marks of that company, the vacuum tubes being known as the 'Radiotron.'".

Of what use would such a letter be to persons dealing in the radio apparatus of the plaintiff exclusively? None, unless it would tend to cause such person to continue to handle the product of the plaintiff exclusively. But one letter would serve that purpose as well as 20. The remaining 19 were sent for some purpose. Of what use would they be to a person dealing in the products of plaintiff exclusively? Obviously none, unless its contents were revealed by them to persons not dealing in the products of the plaintiff, or contemplating the purchase of the radio apparatus of another. Plainly, the easiest and most effective way of revealing the contents of the letter to another was to send or deliver

to him one of the 19 extra copies. Some of the copies were so distributed. The probability of their being thus distributed is so obvious that the plaintiff must be held to have intended that result. In fact, I think there was an implied request that the letters should be so distributed, that the maxim "Qui facit per alium, facit per se," applies, and that the distribution by the immediate recipients of the letters from the plaintiff was a distribution by the plaintiff. Moreover, it was plainly the purpose of the order of July 26th, not only to nullify the effect of the letter of July 1st in so far as it pertained to the defendant, but also that that result should be accomplished without requiring the plaintiff to disclose its mailing list, and possibly thereby its list of customers, to the defendant. The defendant was thereby deprived of any direct method of determining whether the order was complied with. Such circumstances called for the utmost good faith on the part of the plaintiff. It was its duty to place upon the list filed with the clerk the name of every person that had received a copy of its letter of July 1st. If for any reason that was impossible, it was its duty to make a full disclosure of the facts. It did neither, and must accordingly be adjudged in contempt.

It is, however, due to counsel for plaintiff that it be said that they are without fault, for it clearly appears that they had no knowledge until after the pending application was made that more than one copy of the letter had been sent by the plaintiff to the persons named on the list filed with the clerk.

This proceeding is for civil contempt. Its purpose is remedial, and for the benefit of the defendant, not punitive, to vindicate the authority of the court. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 441, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, et seq. To ascertain the extent of the loss, expense, or injury the defendant has sustained by plaintiff's disobedience of the order, testimony will be heard in open court on Wednesday, November 15, 1922. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 444, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Wells Fargo & Co. v. Oregon Co. (C. C.) 19 Fed. 20; Christensen Engineering Co. v. Westinghouse Air B. Co., 135 Fed. 774, 780, 68 C. C. A. 476, et seq.