**GIBSON et al. v. SMOOT ENGINEERING CORPORATION.**

No. 601.

District Court, D. Delaware.

May 25, 1931.

John E. Hubbell, of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiffs.

Richard Eyre, of New York City, and Charles F. Curley, of Wilmington, Del., for defendant.

NIELDS, District Judge.

George H. Gibson, patentee, and Leeds & Northrup Company, his licensee, filed their bill of complaint in this court charging infringement of forty-one claims of five patents. All of these claims relate, generally speaking, to automatic control mechanism for boiler furnaces. On final hearing this court entered a decree dismissing the bill of complaint with respect to certain of the letters patent, and adjudging the defendant to have infringed certain other of those patents, including claims 1, 12, 13, and 16 of Gibson patent, No. 1,167,343. 28 F.(2d) 123. This decree was affirmed by the Circuit Court of Appeals. 40 F.(2d) 819.

The defendant has filed its petition bringing to the attention of the court a letter sent to the board of water and electric light commissioners of Lansing, Mich., by Leeds & Northrup Company, one of the plaintiffs. Defendant asserts the letter misrepresents the decision of this court and of the Circuit Court of Appeals, and was sent for the purpose and with the effect of injuring the defendant. The letter complained of was sent under the following circumstances. The board of water and electric light commissioners of the city of Lansing published specifications for a complete piping system to be installed in the extension to Moores Park Station in that city, including, among other things, a complete combustion control system for four boilers "as manufactured by the Smoot Engineering Corporation, and known as Smoot control, or equal." The specifications also contained a description of the combustion control system called for. The defendant and the plaintiff Leeds & Northrup Company were competing bidders for the combustion control portion of the contemplated extension. The defendant was the successful bidder. Thereupon the Leeds & Northrup Company wrote the letter above complained of to the Lansing board, stating, among other things:

"We understand that the specifications for Moores Park Station specify combustion control apparatus, covered by claims 1, 12, 13 and 16 of U. S. Patent 1,167,343 granted to George H. Gibson, January 4, 1916. We have exclusive license rights under this patent, a copy of which is enclosed.

"The Court of Appeals for the Third Circuit recently held the above claims valid and infringed in a suit brought by Gibson and our company against the Smoot Engineering Corporation.

"We feel that you would not knowingly

purchase from someone else, and install, combustion control apparatus infringing the above claims, and it is the purpose of this letter to notify you that apparatus, called for by the above mentioned specifications, we hold infringes these claims as construed by the Court of Appeals. It is not our desire to influence you toward the installation of our apparatus merely because of our patent rights, as we want all of our combustion control apparatus to be purchased on its merits. However, we are the only company which can supply combustion control apparatus according to the next to the last paragraph of page 1 of your specifications, as we are the only company having license rights under the above Gibson patent."

The paragraph of the combustion control specification referred to in the letter reads: "The air regulator at each boiler shall balance the impulse from the master controller against the measure of the air supply of the boiler, as indicated by the boiler draft. This regulator shall move the boiler outlet damper through a suitable power cylinder or other power amplifying device."

This letter coming to the attention of the defendant, its counsel wrote to Leeds & Northrup Company stating, with respect to the above-mentioned letter, "These statements are without justification, and we call on you to disavow them forthwith by a suitable letter to the recipient of your former letter;" and further, "We regard the writing of such a letter as this to customers or prospective customers of the Smoot Engineering Corporation as the making of an improper use of the process of the courts and as an act of unfair competition. * * *" Counsel for Leeds & Northrup Company, in their reply to this letter, after quoting the above-mentioned paragraph of the specification, stated, "In view of the paragraph just quoted, I see no basis for your criticism of the Leeds & Northrup Company letter of June 20, 1930." Thereupon defendant came into court asking for injunctive relief.

It is apparent from a study of the record that there is a definite difference of opinion between the parties, not only as to the proper interpretation to be given to the opinion of the court and the scope of the claims in question, but also as to what apparatus could be furnished under the Lansing specification and at the same time be without the scope of the claims of the Gibson patent in question. In view of the conclusion hereinafter reached it is unnecessary to decide now the disputed construction sought to be placed on such opinion, claims, and specification.

The plaintiffs had an undoubted right to notify the customer of the defendant of its patent rights under the Gibson patent. Clip Bar Mfg. Co. v. Steel Protected Concrete Co. (D. C.) 209 F. 874; Racine Paper Goods Co. v. Dittgen (C. C. A.) 171 F. 631. "Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal." Virtue v. Creamery Package Mfg. Co., 227 U. S. 8, 37, 33 S. Ct. 202, 208, 57 L. Ed. 393. This right, however, is limited by the requirement of good faith. Should it appear that, under pretense of giving notice of patent rights, a patentee, or one claiming under him, is pursuing a course which is calculated to injure unnecessarily a competitor's business and with the plain intention of so doing, his conduct will be deemed malicious. Such a patentee brings himself within the rule of law obtaining in cases of unfair competition in trade, and is subject to injunction. Racine Paper Goods Co. v. Dittgen (C. C. A.) 171 F. 631.

I think this case comes within the principle so well stated by Judge Denison, speaking for the Circuit Court of Appeals for the Sixth Circuit, in Alliance Securities Co. v. De Vilbiss Mfg. Co., 41 F.(2d) 668, 670. He there said: "We are aware of no ground upon which claims of infringement made by a patentee can be considered a legal wrong unless those claims are made in bad faith; that is, maliciously. This bad faith may be made to appear in a variety of ways, but until it does appear the patentee has the right to notify all those whom he believes to be infringing that he will hold them for such liability as he may be able to establish."

The affidavits and exhibits do not satisfy me that the Leeds & Northrup Company in sending this letter acted in bad faith. The important fact to be determined at this time is not whether the opinions and belief expressed in good faith by the skilled officers or employees of the Leeds & Northrup Company as to the meaning of the Lansing specification, the opinion of the Court of Appeals, and the scope of the claims of the Gibson patent, are sound, or, on the other hand, whether the views taken of such specification, opinion, and claims by the skilled officers and employees of the defendant, are to be accepted.

The crucial fact is whether the letter was written in good faith and expressed the opinions and belief actually entertained by the officers of the Leeds & Northrup Company. The letter to which objection is made was prepared and sent under the advice and upon the recommendation of patent counsel who represented the plaintiffs throughout this extended and hard-fought litigation. The substance and form of the letter was approved by the general patent counsel of the Leeds & Northrup Company. While it is true that advice of counsel is not always a complete defense to a charge of this kind, yet when one believes that he has a patent which will be infringed by the construction of a competitor, and that belief is substantiated by advice of reputable and learned counsel, whose good faith in giving it is not in dispute, it is at least doubtful whether a finding of bad faith on the part of the patent owner in sending a notice or warning of probable infringement to the competitor, or the competitor's customer, could be sustained. The letter enumerated the claims of the patent relied on and inclosed a copy of the patent. It also called particular attention to the portion of the Lansing board specification which the Leeds & Northrup Company believed called for the furnishing of infringing apparatus. As to this portion of the specification, the letter stated, "We understand that the specifications for Moores Park Station specify combustion control apparatus, covered by" the claims of the Gibson patent in question. At most, this can only be said to express an opinion or belief. If in doubt, the Lansing board had before it its own specifications, and a copy of the patent, and was in a position to form its own judgment on the alleged charge of infringement. The most objectionable portion of the letter is the statement that the apparatus called for by the specification "we hold infringes these claims as construed by the Court of Appeals." A copy of the opinion of the Court of Appeals, however, was not inclosed with the letter. It might well have been. Here again I think the use of the words "we hold" sufficiently qualifies the later phrase "infringes these claims as construed by the Court of Appeals" and clearly indicates to the recipient of the letter that it was but the expression of an opinion or belief on the part of the writer.

Further, the letter was sent to a municipal board. The court may take judicial notice of the fact that such boards usually, if not universally, have available to them the services of experienced counsel, and that contracts are let only on the advice and approval of counsel. Under these circumstances, it is difficult to conceive that the letter in question read as a whole would be considered by the Lansing board other than as an expression of opinion on the part of the Leeds & Northrup Company that the claims of the Gibson patent covered any apparatus that would comply with the combustion control specification issued by the board. Nor is there a scintilla of evidence that the board was in fact in any way misled or influenced by the receipt of the letter. It is true that when the formal order for the desired apparatus was given, it contained a clause making the order expressly contingent upon the defendant satisfying the city of Lansing that the latter would be protected against damages for patent infringement or litigation. But the defendant does not contend that the inclusion of such clause was due to the Leeds & Northrup Company letter. Such a patent protection clause is a usual one in such cases.

On the whole, I am not satisfied that the defendant has presented a case justifying the exercise of the injunctive power of this court. In reaching this conclusion I am not unmindful of the importance of a court of equity seeing that its decrees are not made the means of working an injustice. But the situation before the court is far different from that considered by this court in Radio Corporation of America v. Radio Audion Co., 284 F. 581, 582, wherein Judge Morris found that many copies of the objectionable letter had been sent out to distributors, jobbers, and dealers in general, and that statements in the letter "were improper, misleading and deceptive." Likewise, in Rollman Mfg. Co. v. Universal Hardware Works, 238 F. 568, 569, Judge Buffington, speaking for the Circuit Court of Appeals of this circuit, with respect to the letter there in controversy, found, "This disingenuous letter subtly left to be inferred by the defendant's customers as facts and conclusions that which the writer carefully abstained from so stating."

The prayer of the defendant's petition must be denied.