RACINE PAPER GOODS CO. v. DITTGEN.

(Circuit Court of Appeals, Seventh Circuit. April 13, 1909. Rehearing Denied May 28, 1909.)

No. 1,527.

1. CORPORATIONS (§ 519*)—ACTIONS—ISSUES AND PROOF.

In a suit for unfair competition against a corporation which succeeded to the business of a partnership, the members of which were the incorporators, complainant may allege and prove acts of the partnership prior to the incorporation as tending to show a continued course of conduct and intention, although such acts as causes of action may be barred by limitation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2085; Dec. Dig. § 519.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 97*)—UNFAIR COMPETITION—THREATENING SUIT FOR INFRINGEMENT OF PATENT—INJUNCTION.

Complainant and defendant were competing manufacturers of individual cigar pouches, made of paper in sheets, and were the only manufacturers of the same in the United States. Both manufactured under patents, and during five years or more defendant by letters and through its salesmen continuously represented to purchasers of such articles that complainant was infringing its patents and threatened suits against users of his product, causing customers to refuse to give him orders and to cancel orders, resulting in serious injury to his trade. He submitted samples of his goods to defendant and requested the bringing of suit to determine their rights; but no such suit was brought, nor did defendant allege or attempt to prove infringement when sued for unfair competition by reason of its acts. Held, that its failure to make an attempt to establish the legal right it claimed was conclusive evidence of its bad faith and of unfair competition, and that complainant was entitled to an injunction and an accounting for damages.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 110; Dec. Dig. § 97.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

For opinion below, see 164 Fed. 85.

See, also, 164 Fed. 84.

Appellee, who has been for more than 15 years a manufacturer and dealer in paper cigar pouches, filed his bill in the Circuit Court charging that appellant, a Wisconsin corporation engaged in the same business, for the purpose of suppressing competition, and with intent to break up and destroy appellee's business, was, at the time the bill was filed, and had been theretofore, circulating among appellee's customers and the trade generally, by letters and otherwise, representations that appellee was infringing appellant's letters patent, that they would render themselves liable in damages should they use appellee's device, a so-called multiple cigar pouch made of paper which he had been manufacturing and selling for five years last past under his patent No. 662,226, granted November 20, 1900, that he had been enjoined from such manufacture, that suits would be filed by appellant against appellee's customers if they used his pouches, and thus made it generally understood in the trade that appellant owned or controlled patents covering appellee's manufacture, and that persons using the appellee's pouches would render themselves liable for damages to appellant. The bill further alleges that all of said representations were false and malicious and made in bad faith and for the purpose of unfairly destroying appellee's business. The bill further charges: That appellee showed his device to appellant and requested it to desist or bring suit, offering to accept service in any competent jurisdiction and help speed the cause to an early hearing, all of which appellant has declined to do, but persists in such malicious course, and will so continue unless restrained; that in this way many customers have been kept from buying appellee's device; that many would-be purchasers have been induced to cancel orders; that, as he is informed and believes, appellant's agents follow appellee's agents from customer to customer and by such representations prevent sales and secure cancellation of sales already made, whereby appellee has lost not less than $40,000; that his business is being thereby ruined and destroyed; and that unless restrained such action will cause irreparable injury to him. Prayer is made for preliminary and permanent injunction and for an accounting.

The answer asserts that appellant owns patents, in protection of which it has given notice to appellee and the trade, denies all charges of unfair competition in trade, and denies that appellee has suffered or will suffer any damages by any unlawful act done by appellant. The cause was brought to final hearing, and such action was had that the court entered a decree on February 4, 1908, finding that appellant had been guilty of unfair competition in trade, in that it had for many years past, without having brought suit to establish its rights, persistently represented to appellee's customers and to the trade that appellee's cigar pouches infringed appellant's letters patent, that purchases from it and users would be subject to injunction and liable in damages for the use and sale of the pouches, that appellee's trade has been diverted and injured thereby, and decreeing an injunction and ordering an accounting as prayed. Hence this appeal.

Two grounds of error are assigned:

(1) That the court enjoined appellant from notifying infringers of its claims as to infringement unless such notice should be followed up by suit or other judicial proceeding.

(2) That the court decreed defendant to be guilty of unfair competition in trade.

The further facts are stated in the opinion.

E. H. Bottum, T. E. Dennett, and E. B. Hand, for appellant.

George B. Parkinson, for appellee.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). By amendment to the bill, and evidence introduced, it appears that

appellant corporation succeeded to the business of a copartnership of the same name, whose members became the charter members of the corporation about January 1, 1902. In its amended answer appellant denies the charge that the transaction was merely a merger of the copartnership into the corporation, and denies that it committed the acts complained of in the bill, or that they were malicious or false or made for the purpose of destroying appellee's business, or will do so. The amended answer further alleges that all the acts charged against the copartnership are laid more than six years prior to the amendment, and therefore barred by the statute of Wisconsin. With regard to this latter defense, the acts charged, to the extent that they are material to the remedy by injunction, are merely evidentiary, as tending to show a course of conduct and an intention, and are not relied upon as causes of action, although, considering the nature of them, it may well be contended that, even were the statute involved, the amendment would not, under the circumstances, be construed to be anything more than an amplification of the averments of the bill, and therefore not within the limitation act. Patillo et al. v. Allen West Commission Co., 131 Fed. 680, 65 C. C. A. 508. That in a proper case appellee was entitled to the relief sought is held in Emack v. Kane (C. C.) 34 Fed. 46, decided by Judge Blodgett, Farquhar Co., Limited, v. National Harrow Co., 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755, and Adriance Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163. These authorities were followed by Seaman, Circuit Judge, in overruling the demurrer filed to the original bill herein.

Undoubtedly, one claiming that his patent is being infringed should take steps to advise the public of his rights as provided by statute, provided, however, that if it is made to appear that under pretense of so doing he is pursuing a course which is calculated to unnecessarily injure another's business, and with the plain intention of so doing, his conduct will be deemed malicious, and he brings himself within the rule of law obtaining in cases of unfair competition in trade, and subject to injunction.

In the cases cited supra, the means employed to injure the business of the three complainants was by circulars addressed to the trade, differing from the acts of appellant herein more in volume and method of distribution than in substance. The distinction goes only to the degree of certainty in establishing the malicious motive, not to the question of amount of damage sustained. In other words, it requires no prolonged or extensive series of damaging assaults upon one's business to call into service the restraining hand of the law, provided it satisfactorily appears that the acts are done with the purpose of injuring the business, and have injured, and are calculated to injure it. When this is proven, fraud will be implied.

As above intimated, the acts complained of cover a period from 1899 up to the filing of the bill on March 1, 1905, about six years. During that time, and on January 1, 1902, or thereabout, appellant was incorporated, and it is insisted that the course of conduct pursued by its predecessor copartnership cannot be taken into consideration in this suit. Even though it were conceded that ordinarily ap-

pellant could not be held liable in an action based entirely on the partnership acts, it nevertheless is true that for the purpose of ascertaining the intention of appellant, and construing the conduct of appellant in that respect, since its incorporation, and in view of the fact that the corporation succeeded to the copartnership, assuming all its benefits and obligations, those prior acts become not only competent but important. It must be borne in mind that the parties hereto are admitted in the record to be substantially the only persons in the United States engaged in the manufacture of these paper cigar pouches, so that the business course of each seriously concerns both. The evidence of appellee consists of interviews and letters passing between the parties, depositions of appellee and other witnesses, letters written by customers to appellee, and replies thereto. Some of the matters contained in the letters are deemed proven, others, especially those alleging threats made to customers, and not otherwise proven, and those alleging fear on the part of customers, growing out of rumors in the cigar trade to the effect that appellant would make trouble, are not brought home to appellant, and can only be considered, if at all for the purpose of showing the state of mind of the cigar dealers' trade, so far as they may do so, having been received in the regular course of business, and being likely to result from the course of conduct of appellant disclosed by the acts and representations legally established.

It is affirmatively shown by the record that the parties hereto were often in contention, both by interviews and letters; the appellant insisting that appellee should desist from handling the multiple cigar pouches in controversy and threatening suit for infringement, and appellee denying infringement and calling upon appellant to sue. This correspondence covers a period, as above stated, of almost six years immediately prior to the beginning of this suit, and antedating the grant of appellee's patent aforesaid. Appellee sent to appellant a copy of its patent on April 23, 1902, and by his accompanying letter accused appellant of representing to the trade that its devices were infringements, and asking appellant to bring suit. This course was consistently pursued by appellee. It advised appellant that its failure to sue would be deemed evidence that its claim was a mere bluff, and not made in good faith, but for the purpose of "unfair and unmanly competition." The only response to this was that Parmenter, president of appellant, was out of town and would answer when he returned, which he never did.

In July, 1899, appellee was negotiating with Bundy & Co. of New York for sales, and with a view to secure them as exclusive agents for the multiple pouch, when appellant's representative, Parmenter, threatened them, and succeeded in causing them to decline further negotiations because appellee would not give protection against interference in their trade.

In the early part of 1902 appellant wrote a letter to the American Cigar Company of Westfield, Mass., threatening suit if it dealt with appellee. This company was induced to cease dealing with appellee, as it claims through manipulation of its counsel by appellant's representative. Some time prior to June 23, 1902, the Emerson Parchment

Bag Company were advised by appellant's agent, Haas, that his concern had pending injunction against appellee. Josephson Bros. of New York were warned by one Gratz, representing appellant in 1904. Appellant's representative, Parmenter, notified Otto Fritz, a cigar dealer of Cincinnati, some time in the spring of 1905, that his company was going to sue appellee and warned Fritz by letter shortly thereafter against the use of Dittgen's pouches. Parmenter wrote a letter to Len Spalding of Lebanon, Ky., on February 26, 1900, warning Spalding, who was then negotiating with appellee for a large order, against dealing in appellee's pouches, and threatening suit.

On December 22, 1904, appellant advised Ghio & Rovira of New York that the patent office considered there was sufficient ground for infringement against a party manufacturing in Cincinnati, meaning appellee, to grant an interference. So far as the record shows, there was no such matter pending at that time. Whatever proceeding of that character had been pending had theretofore terminated in appellee's favor. All of the foregoing instances are fully and affirmatively established by the evidence.

In addition to the foregoing there is considerable evidence of a hearsay character going to show beyond a doubt that trade generally was in fear of trouble if it dealt wih appellee. New business was halted, and contracts already concluded were abandoned because appellee did not furnish indemnity against acts of appellant. Large amounts in sales were lost by reason of fear of trouble with appellant. It is not unfair to assume that this condition of things grew out of the conduct of appellant above alluded to which was clearly calculated to alarm dealers. The evidence shows large losses resulting to appellee from this apprehension. During all this time appellant took no steps to submit its contention to any tribunal, for judicial determination. Nor was appellee in a position to force it to do so. The appellee testifies, that he had never seen or heard of a pouch that he considered an infringement of his patent, and so could not bring suit against appellant for infringement. He was compelled for almost six years to fight in the dark. It would be difficult to devise a more effective or tyrannous method of misusing his monopoly to destroy a competitor's business. Even though there had been infringement, the exasperating delay to make its character known would be persuasive evidence of malice. If there was no infringement, the maliciousness would be undoubted. Several of appellant's witnesses deny the misrepresentation alleged, and evidence is introduced to show that towards the last salesmen and agents were directed to avoid any attack on appellee's device, one letter, at least, having been sent after the suit was begun, yet this instruction was not construed to prevent some of them from representing that appellant's patents were being infringed. The trial court held that the failure of appellant to introduce evidence on the hearing below to sustain his exclusive rights in the pouch was persuasive of malicious intent. The defense does not materially weaken the force of appellee's evidence. Under the circumstances, it was incumbent on appellant to conclusively establish its right to the device of appellee which it so persistently and underhandedly attacked, within a reasonable time. The facts bring the

case within the rule of law above cited, and the trial court was right in holding that appellant's failure to submit its claim to judicial determination under the facts of the case was conclusive evidence that it pursued appellee, not for the purpose of protecting its rights under its patents, but for the purpose of destroying appellee's business in order to benefit its own trade and stifle competition.

It is unconscionable that appellant should be permitted to use a grant from the government to work a wrong upon appellee without bringing suit to secure a judicial determination. An injunction granted in a proceeding for that purpose would have afforded clearly defined limits to appellant's claims. The course pursued by it herein, by reason of its very indefiniteness, is more onerous and oppressive than would be the order of a court. It was practically prohibitive. It is one of the well-established powers and duties of a court of equity to remedy wrongs such as are here disclosed.

We find no error in the decree appealed from, and it is affirmed.