## CELOTEX CO. v. INSULITE CO.
### No. 1557.

District Court, D. Minnesota, Fourth Division. March 12, 1930.

Wilkinson, Huxley, Byron & Knight, of Chicago, Ill., for plaintiff.

Paul, Paul & Moore, of Minneapolis, Minn., for defendant.

SANBORN, District Judge.

The allegations of the complaint are substantially as follows:

The plaintiff is a Delaware corporation with an office in Chicago. It has for a long time engaged in the business of manufacturing and selling products made from sugar-

cane fiber. Among these are sugar-cane fiber boards adapted to receive plaster and known as Celotex brand insulating cane-board laths. The plaintiff has developed a large and profitable business in this connection, and owns letters patent of the United States relating thereto, and in particular reissue No. 17,007, issued June 26, 1928. The defendant is a Minnesota corporation, with an office in Minneapolis, is engaged also in making fiber boards adapted to receive plaster, and owns United States letters patent No. 1,725,787, issued August 27, 1929. On or about September 1, 1929, the defendant sent to its agents and to various jobbers and dealers in insulating lath made by the plaintiff a circular as follows:

"The Insulite Co.
"Mills
"International Falls, Minnesota
"Fort Frances, Ontario
"General Offices
"Builders Exchange Building
"Minneapolis, Minnesota.
"Sept. 1, 1929.

"Announcing the granting of basic patents to the Insulite Company on 'fiber composition boards used as a plaster base and so constructed as to strengthen the plaster at the joints.'

"The following sketches show a fiber composition board used as plaster base or lath, and constructed to strengthen the plaster at the joints. Patent No. 1,725,787 has been granted, and other patents are pending, all of which give to The Insulite Company the exclusive right for the next seventeen years to manufacture and sell all fiber composition boards constructed in this manner.

"The claims of patent 1,725,787 cover the above constructions.

"Insulite is an all wood-fiber board, full one-half inch thick and is twelve and one-half per cent. more efficient insulation than ordinary 7/16" insulation boards. This patented feature of fiber board when used as a plaster base or lath strengthens the plaster and reduces the tendency to crack at the joints.

"From this date on The Insulite Company will protect itself from any infringement of this patent. Obviously, therefore, all users of insulation plaster base or lath should use Insulite, which is superior in quality to any other fiber board made, and be protected under the patent of The Insulite Company.

"The Insulite Company
"S. W. Backus, V. President."

On or about November 15, 1929, the defendant sent to the same persons another circular as follows:

"The Insulite Co.
"Mills
"International Falls, Minnesota
"Fort Frances, Ontario
"General Offices
"Builders Exchange Building
"Minneapolis, Minnesota.
"Warning!

"Warning to infringers of The Insulite Company's patents including letters patent No. 1,725,787 granted August 27, 1929. This patent covers a fiber composition board used as a plaster base and so constructed as to thicken and strengthen the plaster at the joints. Note carefully the following illustrations.

"Infringement Notice

"Letters Patent No. 1,725,787

"This warning is given to acquaint the building industry and the building material dealers and bring to their attention the fact that The Insulite Company will enforce its patent rights to the limit, and that makers, sellers, users or infringers will be subject to suit for injunction against infringement and for accounting of profits and damages.

"The Insulite Company

"By S. W. Backus, Vice President."

The left-hand cut or drawing on each circular represented insulating lath of a construction and configuration substantially identical with that sold by the plaintiff for many years. The defendant had not, at the time of sending the circulars, made or sold fiber board or lath of that construction, and that construction is not disclosed in its patent. The V-shaped joint, as shown on the circulars, was a construction of lath made exclusively by the plaintiff at the time the circulars were distributed and was recognized by the public as the plaintiff's construction. The defendant's letters patent have never been adjudicated. The circulation of the circulars throughout the trade has caused irreparable injury to the plaintiff, and such injury threatens to continue unless restrained. Although the plaintiff, for many years, has been openly engaged in manufacturing insulating lath of the construction illustrated by the left-hand cut of the circulars, no suit for infringement of its patent has been brought by the defendant, and no notice of infringement has been given to it. In December, 1929, the plaintiff in writing notified the defendant of its alleged acts of unfair competition, and requested it to cease further circularization of the trade and to write another letter stating that no further use should be made of the circulars, and setting forth what the plaintiff claims is the truth with reference to defendant's letters patent. The defendant refused to comply with these requests.

The plaintiff then asks that the defendant be compelled to cease its unlawful acts, and to correct, in so far as may be done, the injury unlawfully suffered by the plaintiff, and that the defendant be compelled to account for profits made by it and damage suffered by the plaintiff because of its unlawful acts.

In support of its allegations in the bill of complaint, the plaintiff filed the affidavit of its vice president and sales manager, showing that for more than two years the plaintiff had been making and selling "Celotex Lath" with a V-shaped joint, and that, so far as he knew, no other concern was marketing such lath during that period; that the circulars sent out by the defendant caused the plaintiff great injury and has necessitated the expenditure of money by it in sending out representatives to reassure its dealers and customers as to their liability for alleged patent infringement, thereby depriving the plaintiff of the normal sales service of the sales organization. The plaintiff has also filed an affidavit of another vice president, showing that from 1925 to December, 1929, the defendant company did not make or sell insulating lath like either of the illustrations in the circular sent out by it, and that the space left between the shoulder of one board and the adjacent outer edge of the other board was so narrow as to serve no purpose except to take care of expansion of the lath when the wet plaster was applied to it. To the same general effect is the affidavit of Mr. Irvine, in charge of the laboratories of the plaintiff company.

In opposition to the plaintiff's showing, the defendant presents the affidavit of Mr. Ellis, an employee of the defendant company in charge of research and formerly in charge of production of the fiber board sold by the defendant, known as "Insulite." This affidavit shows that Mr. Ellis superintended the construction of the principal machines now used to produce Insulite and is the patentee of letters patent No. 1,725,787 applied for August 19, 1925, and issued to the Insulite Company August 27, 1929; that he has invented numerous other improvements relating to Insulite and to machines and processes for producing it; that in 1925 he discovered that when large sheets of Insulite were used as plaster base, the wet plaster would cause them to buckle, and that to overcome this objection he conceived the invention disclosed in the letters patent above referred to, which is the old ship lap joint, but with the depth of one of the recesses in a direction transversely of the board greater than the other, so as to take care of expansion; that some two years after he had made this invention and the defendant had put it into extensive use, the plaintiff purchased the Hanson patent, application for which postdated his application; that the plaintiff caused the Hanson patent to be reissued with claims apparently intended to cover his invention, and began to make Celotex boards suitable for a plaster base, with the V-shaped joint; that the defendant was advised by its counsel that the Celotex structure is an in-

fringement of letters patent No. 1,725,787, issued on his application; that, in order to notify the trade of the issuance of this patent, the circulars in question were sent out by the company; that they were prepared by the defendant under advice of counsel; that, with the second circular which was sent to defendant's supervisors and salesmen, letters were sent, instructing them not to threaten dealers, contractors, or consumers, but to report infringements; that when his application was pending, the defendant learned of a purchase by the plaintiff of Hanson patent, No. 1,651,951, dated December 6, 1927, and the reissuance of the same with claims drawn to cover his invention; that his attorneys then added to his application substantial copies of a number of claims which had been added to the Hanson patent by the reissue. The application with the added claims was allowed, and hence there are two patents containing a number of claims in practically identical language; that the plaintiff has been advertising to the trade that Celotex lath is covered by the Hanson reissue patent, and, if it is, it is also covered by Ellis patent, No. 1,725,787, granted upon an earlier application. The affidavit has attached a letter of November 19, 1929, sent to the supervisors and salesmen of the defendant, telling them not to threaten, and also a letter of the plaintiff dated November 18, 1929, directed to all Celotex dealers, telling them that the lath made by it is protected by patents and that it will take all necessary steps to protect itself and its customers. The affidavit of S. W. Backus, vice president of the defendant, is to the same effect, and asserts that whatever was done by the defendant was upon the advice of counsel, and that, at the time of sending out the circulars, counsel were instructed to begin suit for infringement against a user or distributor of Celotex lath; that a bill of complaint has been prepared against such a distributor and will be filed without delay in this district. Mr. Backus denies any acts of unfair competition, and asserts that the contents of the circulars were true. In another affidavit made by Mr. Ellis, he states in effect that the space between the outside edges of the Insulite lath has varied and has not been limited, and that one of the effects gained by his invention was to strengthen the plaster at the joints, although that was not at first regarded as important and was not featured in his original application; that the Hanson patent was at one time offered to the defendant, but not purchased because it was conceived to cover the same invention as that applied for by Ellis at an earlier date; that the plaintiff did not change its boards until after the defendant had put out narrow sheets of lath with wide joints. This affidavit is supported by that of Vernon L. Larson. Henry Christopher, who prepared the application for Mr. Ellis, states that it was not intended to limit the width of the grooves at the joints under Ellis' invention, and that the sketches which are attached to the affidavit of Mr. Ellis had indicated that plaster would extend into these grooves.

The record shows that a bill of complaint was filed in this division of the district on the 3d day of February, 1930, by the defendant against Reserve Supply Company for infringement of letters patent No. 1,725,-787, based on the plaintiff's construction, and, although there is no showing that the defendant therein named has been served with subpœna, it appears to be conceded that the action is now pending in this court. Counsel for defendant has stated in open court that no further circularizing of the trade will be done until that action is decided.

The question now presented is whether, upon the record before the court, the plaintiff is entitled to a temporary injunction, and whether, if it is, the court should order the defendant to file with the clerk a list of those whom it has circularized, and require the clerk, at the defendant's expense, to send a copy of such order to each of the persons on the list.

The plaintiff's contention is that the record shows that the acts of the defendant in sending the circulars to the trade were unfair; that the circulars were misleading; that they were not sent in good faith as notice to an alleged infringer, to be immediately followed by suit, but constituted clearly an effort to destroy the plaintiff's business. In its brief, the plaintiff says:

"In the present case, no suit at all has been brought against the financially responsible manufacturer, The Celotex Company, but finally after a delay of five months from the time when the first notices were sent out, on September 1, 1929, and after the defendant had been notified of its unfair acts, with the request to cease and write a letter to the trade stating the true and exact situation, answered by an absolute defiance on the part of the defendant, and almost a month after the present suit had actually been started, the defendant, on February 3, 1930, one week after the hearing in this case, at last brought a suit against a customer.

"Not only the misleading character of the notices and the obvious attempt indicated therein and clearly stated in Plaintiff's Exhibit C (the first circular), to divert customers of The Celotex Company to The Insulite Company, but the bad faith of the defendant's acts, is clearly apparent from the record of this case in the defendant's attempt to injure the plaintiff without taking the fair and obvious course of bringing a suit for alleged patent infringement against The Celotex Company either in the Seventh Circuit or in the Third Circuit (where The Celotex Company is incorporated) to get a judicial determination of its rights, rather than making an attempt to frighten plaintiff's customers by threats, misleading statements and half truths."

The defendant's position is thus stated in its brief:

"After the Ellis patent issued on August 27, 1929, defendant was advised by its counsel that it was proper to send out to the trade a notice of the issuance of the patent and that a certain type of board infringed the claims of this patent. This notice was properly drawn for this purpose under the advice of counsel and was sent out to the trade. This was done under the authority of the decision of the Court of Appeals of this circuit in the case of Virtue v. Creamery Package Company, 179 F. 115, 120, in which it was held that the defendants in that case were authorized to circulate 'among the agents, users, purchasers and prospective purchasers of the churns of the plaintiff, located in different states, reports and statements that the combined churns and butterworkers sold by the plaintiffs were infringements of the Disbrow patent owned or controlled by the defendants and that they threatened to bring suit against the users of plaintiffs' churns.' The notices in the present case were strictly within the holding of the Court of Appeals of this circuit in the Virtue Case. In the decision of the Court in the Virtue Case, it was said: 'If they [the defendants] had the right to bring the suits, they had the right to issue the warnings.'

"It is clear, in this case (and has not been denied by plaintiff) that plaintiff's structure clearly infringes the claims of the Ellis patent. Defendant, therefore, had the right to bring suit for infringement, and, under the Virtue Case, having the right to bring suit for infringement of the Ellis patent, it had the right to send out notices of infringement, and to send them to the trade and users of composition fiber board generally."

Certainly in this case it is not necessary for the court to determine whether the plaintiff's construction does or does not constitute infringement of the so-called Ellis patent owned by the defendant, or to go any further than to inquire whether the owner of such patent might believe in good faith that it did constitute an infringement.

The plaintiff, in support of its contentions, cites Adriance Platt & Co. v. National Harrow Co. (C. C. A. 2d) 121 F. 827, 830, in which it was said: "As, ordinarily, the patent owner would be prompt and zealous to assert his claims, if he halts and purposely procrastinates, and attempts to effect by threats and manifestoes that which he can compel by the strong hand of the law, a strong inference arises that he has not any real confidence in his pretensions. This inference becomes irresistible if he refuses to bring suit during a considerable period of time when the alleged infringement is open, notorious, and defiant, and so extensive as to threaten destruction to his alleged exclusive rights." Also: Dittgen v. Racine Paper Goods Co. (C. C.) 164 F. 85, affirmed (C. C. A.) 171 F. 631; Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 F. 347; Commercial Acetylene Co. v. Avery Portable Lighting Co. (C. C. ) 152 F. 642, affirmed (C. C. A.) 159 F. 935; Price-Hollister Co. v. Warford Corporation (D. C.) 18 F. (2d) 129; Sun-Maid Raisin Growers of California v. Avis et al. (D. C.) 25 F. (2d) 303; Panay Horizontal Show Jar Co. v. Aridor Co. (C. C. A. 7th) 292 F. 858, 859; Emack v. Kane et al. (C. C.) 34 F. 46; United Electric Co. v. Creamery Package Mfg. Co. (D. C.) 203 F. 53; Johns-Manville Co. v. Lovell-McConnell Mfg. Co. (C. C. A.) 212 F. 923; United States v. Patterson (D. C.) 205 F. 292; Patterson v. United States (C. C. A.) 222 F. 599.

The defendant relies largely upon the case of Virtue v. Creamery Package Mfg. Co. (C. C. A. 8) 179 F. 115, but cites, in addition: Clip Bar Mfg. Co. v. Steel Protected Concrete Co. (D. C.) 209 F. 874; Chase v. Tuttle (C. C.) 27 F. 110; Frost Co. v. Kora Co. (C. C.) 136 F. 487, and other cases.

There appears to be no great difference of opinion as to the law in cases of this kind, and, so far as this circuit is concerned, it is stated in Virtue v. Creamery Package Mfg. Co., supra, as follows (179 F. 120):

"That the owner of a patent may notify infringers of his claims, and warn them that, unless they desist, suits will be brought to

protect him in his legal rights, is sustained by numerous decisions. Kelley v. Ypsilanti Dress Stay Manufacturing Co. (C. C.) 44 F. 19, 10 L. R. A. 686; Computing Scale Company v. National Computing Scale Company (C. C.) 79 F. 962; Farquhar Company v. National Harrow Company, 102 F. 714, 42 C. C. A. 600, 49 L. R. A. 755; Adriance, Platt & Co. v. National Harrow Company, 121 F. 827, 58 C. C. A. 163; Warren Featherbone Company v. Landauer (C. C.) 151 F. 130; Mitchell v. International, etc., Company (C. C.) 169 F. 145; 30 Cyc. 1054.

"The only limitation on the right to issue such warnings is the requirement of good faith. There is nothing in the warnings given in this case to show that the letters or notices were false, malicious, offensive, or opprobrious, or that they were used for the willful purpose of inflicting injury. In such a case it was said, in Kelley v. Ypsilanti, supra:

" 'It would seem to be an act of prudence, if not of kindness, upon the part of a patentee, to notify the public of his invention, and to warn persons dealing in the article of the consequence of purchasing from others. Chase v. Tuttle (C. C.) 27 F. 110; Boston Diatite Company v. Florence Manufacturing Company, 114 Mass. 69, 19 Am. Rep. 310; Kidd v. Horry [C. C.] 28 F. 773.'

"There is nothing in this case to indicate that any of the warnings issued by the defendants were made in bad faith, and they were promptly followed by the institution of the infringement suits. In issuing notices and warnings we think the defendants were acting within their legal rights. If they had the right to bring the suits, they had the right to issue the warnings. It may be, and probably is, true that the pendency of these suits resulted in some damage to the plaintiffs by lessening the sale of the challenged device; but such damage was an incident of the suits, and cannot be made the basis of a recovery."

The question in this case is not whether the defendant was guilty of poor sportsmanship or a violation of good business ethics, but whether a finding of bad faith is justified. The presumption is that men act in good faith. Questions of good faith can ordinarily only be determined by what is said or what is done. Necessarily, an attempt to settle a controversy, cognizable in a court, by means of threats or intimidation through agents, circulars, or advertising is evidence of bad faith and a lack of confidence in the righteousness of one's cause. The damages occasioned from the acts of a person proceeding in good faith would be no different than those resulting from the same acts performed by one acting in bad faith; so that the amount of damage done is of no assistance in reaching a conclusion in a case of this kind.

The indicia of bad faith pointed out by the plaintiff are:

(1) Unfairness of the circulars, in that they show constructions different from those of the defendant, but one of which is identical with that of the plaintiff;

(2) Failure to bring suit immediately after issuing the warning;

(3) Lack of necessity of notifying the trade at all, since the plaintiff is financially responsible and can be sued in either of two districts.

As indicating good faith, the defendant asserts:

(1) An honest belief in the truth of its circulars;

(2) That it was advised by its counsel that the construction of the plaintiff constituted infringement of the defendant's patent; that it was also advised that it had the right to send out these circulars, which were prepared under the direction of counsel; that it instructed counsel to bring suit immediately.

While the patent of the defendant has not been adjudicated, and it seems apparent that the questions as to what its invention consisted of, how broad the scope of its patent is, and whether patentable novelty is involved, are uncertain, the defendant could have believed, in good faith, that the patent gave it the exclusive right to manufacture and sell the fiber composition board shown by the cuts in its circulars. The circulars were misleading if the plaintiff's contention with reference to the scope of the claims of the plaintiff's patent are correct, but not otherwise. The defendant had the right to bring suit against the plaintiff for infringement, and therefore had the right to warn the trade with respect to what it claims constituted an infringing construction, if it acted in good faith. The financial responsibility of the plaintiff and the number of places where it might be sued would not be determinative of the question of the right to circularize the trade. Advice of counsel may not always be a complete defense to a charge of bad faith, but when one honestly believes he has a patent which is being infringed, and that belief is substantiated by advice of reputable and learned counsel, whose good

faith in giving it is not in dispute, and when the warnings or circulars sent to the trade are prepared by such counsel and sent out with his sanction and upon his assurance of a legal right to send them, and when such counsel has been instructed to bring suit, it is doubtful whether a finding that the person who sent them acted in bad faith in so doing could be sustained. In view of the Virtue Case, where counsel is honestly of the opinion that the construction of a competitor constitutes an infringement of his client's patent, he would be justified in advising that client that he had a right to send out circulars warning the trade, provided that he did it in good faith, with the purpose of fairly stating his position and with the intention of immediately commencing suit to determine the question of infringement. Where such advice was given, in order to find bad faith one must necessarily conclude that in sending the circular the client acted, not in an honest belief that his patent was infringed, and not in reliance upon the advice of his attorney, but for the purpose of harassing and willfully injuring a competitor.

The one serious weakness of defendant's position is its delay in having suit commenced. That might justify the relief asked for by the plaintiff, but, with the presumption of good faith in the defendant's favor and with a showing that it has acted throughout upon advice of counsel—which negatives, to some extent, the idea that any delay in bringing suit was due to its own neglect—I shall not find that the defendant did not act in good faith in issuing the circulars.

The motion for a temporary injunction is denied.

It would be error to dismiss the bill of complaint. The facts therein stated do constitute a cause of action.