**SOLEX LABORATORIES, INC., Plaintiff-Appellant,**

v.

**PLASTIC CONTACT LENS COMPANY et al., Defendants-Appellees.**

**No. 12530.**

United States Court of Appeals
Seventh Circuit.

June 24, 1959.

Allan D. Mockabee, Fred H. Miller, Los Angeles, Cal., Bertram Wm. Coltman, Chicago, Ill., Hazard & Miller, Los Angeles, Cal., of counsel, for appellant.

A. W. Molinare, Albert E. Jenner, Jr., Chicago, Ill., Philip W. Tone, Will Freeman, W. M. Van Sciver, Chicago, Ill., Bair, Freeman & Molinare, Chicago, Ill., Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., of counsel, for appellees.

Before SCHNACKENBERG, PARKINSON and CASTLE, Circuit Judges.

---

638

CASTLE, Circuit Judge.

This is an interlocutory appeal from a preliminary injunction issued against the plaintiff in a patent infringement suit. Appellant, Solex Laboratories, Inc., (Solex) the owner of a patent on a corneal type contact lens (the Tuohy patent) sued defendants-appellees, The Plastic Contact Lens Company (Plastic) and two of its officers for infringement. The complaint was filed March 15, 1957, and subsequent to the filing of an answer and counterclaim (March 27, 1957) and a supplemental counterclaim and answer (October 17, 1958) raising issues of validity, infringement and misuse, the preliminary injunction was issued October 17, 1958 [1] on the motion of Plastic after notice and hearing.

The issues for determination on this appeal are (1) whether the district court abused its discretion in granting the preliminary injunction, and (2) abused its discretion in setting the amount of the injunction bond.

█ The rule governing the scope of our review in such matters is succinctly stated in Westinghouse Electric Corporation v. Free Sewing Machine Co., 7 Cir., 256 F.2d 806, 808 where it was said:

"Upon an appeal from the granting or denial of a preliminary injunction, this Court has a very limited scope of review. Mytinger & Casselberry, Inc. v. Numanna Laboratories Corp., 7 Cir., 215 F.2d 382, 384. The sole issue here is whether the District Court abused is discretion. Weiner v. National Tinsel Mfg. Co., 7 Cir., 123 F.2d 96, 97; Doeskin Products, Inc. v. United Paper Co., 7 Cir., 195 F.2d 356, 360–361."

Plastic's motion was supported by affidavits and exhibits and Solex filed an affidavit and exhibit. The pertinent facts insofar as this appeal is concerned are as follows:

Solex and Plastic are both manufacturers of contact lenses. During the pendency of the instant case proceedings were also pending in the United States District Court of the Southern District of California between Solex and six fitters and dispensers of contact lenses in which Solex claimed patent infringement. None of the defendants in the case at bar was a party to the California litigation. On August 6, 1958 the California District judge filed an opinion, Solex Laboratories, Inc. v. Graham, 165 F.Supp. 428, that the patent was valid and infringed, but at the time of the hearing and issuance of the temporary injunction in the instant case the California court had not entered findings of facts or conclusions of law or a decree or other appealable order. Concurrently with the filing of his opinion the California district judge released a document entitled "Statistical Facts and Summary in the Contact Eye Glass Cases, decided by me, August 6, 1958" in which after identifying the parties to the litigation, setting forth pertinent dates and mentioning the time consumed in the trial, the Judge stated,

"* * * This is the second time that this particular patent has been before this Court. Judge Ben Harrison had a case which was filed by Solex against Pacific Contact Laboratories, Inc., on November 17, 1950. Judge Harrison held the patent to be valid and infringed. On appeal, the Court of Appeals for this Circuit upheld Judge Harrison. The defendants in my case are entirely different defendants and they were therefore entitled to a distinct trial and offered a much more elaborate defense than was done in the case before Judge Harrison. That case was Solex Laboratories v. Pacific Contact Laboratories [9 Cir., 209 F.2d 529].

"The original contact eye glass was quite large and the contact was made on the eye over the white portion. This contact was uncomfortable because it interfered with nor-

1. Amended on October 23, 1958.

mal blood circulation and the wearer could only keep the lens in place for a short period. In addition, this early lens resulted in clouded vision because an artificial fluid had to be used between the lens and the eye and this fluid rapidly deteriorated and caused clouding. The Tuohy invention reduced the size of the lens to a very small structure made out of plastic. It covered a little less than the colored portion of the eye and it touched the eye directly only at the highest point in the eyeball. Outwardly from that point there was a slight flaring so that natural tear fluid would move into the area and the use of artificial fluid was eliminated. This was new and was held to be invention.

"The case has now been referred to Theodore C. Hocke a Special Master to determine how many infringing lenses the various defendants have made or sold. When Hocke determines the number of the infringements, he will report back to the Court which will then fix a royalty which the defendants will have to pay to Solex Laboratories, Inc., and the defendants will then be enjoined from further infringements unless they obtain licenses from Solex. * * *"

Solex circularized the trade, including approximately 7,000 of Plastic's customers, with a copy of the document above mentioned. It was accompanied by a letter in which Solex quoted portions of the Court's opinion and added in part:

"It is our belief that if you are using Contact Lenses, of the corneal variety that such lenses fall within the claims of our patent; therefore, you are illegally usurping rights and privileges which belong wholly to us, and it is required that you have our permission to use, sell or manufacture such lenses. The purpose in writing this general letter is to assure you that we shall continue relentlessly to prosecute any and all individuals whom we believe are infringing on rights which the Federal Courts and the Patent Office, and indeed our Constitution says belongs to us.

"To make it clear, we quote Judge Tolin from page 22 line 8 [165 F. Supp. 436]:

" ' * * * IT APPEARS BY SUBSTANTIAL EVIDENCE, AND THE COURT FINDS IT TO BE TRUE, THAT THE CONTACT LENSES SOLD BY DEFENDANTS ROBERT GRAHAM AND JOHN L. ROBERTS, d. b. a. JOHN L. ROBERTS OPTICAL CO., WERE PRODUCED BY THE PLASTIC CONTACT LENS COMPANY OF CHICAGO, ILLINOIS.'

\* \* \* \* \* \*

"If you are a doctor, or dispensing optician, please find out from an attorney what the facts of patent life are, rather than listening to some representative of a house who tells you that their lens is different from the Tuohy Lens. You are the responsible party. You must defend yourself. While a copy of the full and complete decision is available on request, these verbatim quotations from the actual decision should guide you in the action you will take.

\* \* \* \* \* \*

"Remember that if you sell, make or use a contact lens that falls within the court determined rights of the Solex Patent you may not do so without receiving permission from us. Licenses are available and we welcome your inquiry concerning licensing. There are serious consequences to patent infringement. If you are not fully aware of them it would be my suggestion that you seek counsel before it is necessary that we bring you to court should you plan to continue the use of infringing lenses."

This material was accompanied by a letter addressed to the individuals and referring to the enclosures and stating:

"Our purpose in sending this material to you is to guide you in view of this clarification of the patent situation and in the sincere hope that litigation: Solex v. Dr. Hattie M. Davisson can be avoided.

"Will you please have your patent counsel read the decision so that you will be properly advised of the seriousness and expense involved in litigation; which, unfortunately must result if we cannot reach agreement.

"Please get in touch with me when you have reached your decision regarding licensing. Any questions that may arise that I can answer I will be happy to be of help."

Another publication sent to defendant's customers was a newspaper composite made up of facsimiles of eight newspaper articles reproduced on a single page. Titles to four of these articles are as follows:

"Eye Doctor Held Guilty in Patent Case"

"Six Found Guilty of Infringement"

"Eye Doctors Convicted of Patent Infringement"

"Doctors Convicted of Cornea Lens Patent Invasion".

In its supplemental counterclaim the allegations of which stood admitted at the time the temporary injunction was issued, Plastic alleged that the materials just described were circulated for the purpose of damaging Plastic and to put the company out of business, and with malicious intent and in bad faith for the purpose of causing irreparable injury and permanent damage to Plastic's reputation and loss of its customers. In addition Plastic alleged that Solex had caused press releases to be sent to newspapers and magazines containing the claim that "It is the contention of inventor Tuohy that there is no lens manufactured in the United States today of a corneal type that does not infringe the Tuohy patent". In this connection Solex's counsel during argument on the issuance of the injunction stated "Now, Counsel for defendants have stated that the claim is made that every corneal lens infringes the patent in suit. I would challenge Counsel to point that out definitely. I don't know whether every corneal lens does or does not". Again, on the same subject he said "Not all corneal lenses, we don't know, we haven't seen them all."

The supplemental counterclaim also alleged the issuance of another press release by Solex entitled "U. S. HOLDS EYE DOCTORS, OTHERS IN PATENT VIOLATION".

The counterclaim also contained allegations that the circulation of all these materials had caused and was causing great irreparable injury to Plastic's business and had resulted in loss of customers and caused and was causing great confusion, annoyance, and intimidation of its customers. Exhibits attached to the motion for the preliminary injunction included letters from customers of Plastic advising that they had received the materials being circulated by Solex and making inquiry as to what arrangements were being made to protect the customer against suit for patent infringement.

The District Court concluded that unless the injunction was issued immediately irreparable injury, loss and damage would result to Plastic and its business would be irreparably injured because of the improper use of the proceedings in the California case to force Plastic's customers to take licenses from Solex or purchase from Solex, and by suits against customers of Plastic. The court further determined that the injury, loss or damage to Solex which might result from the injunction was negligible.

The preliminary injunction issued restrained Solex pending final determination of the issues of the validity, enforceability and infringement of the patent against Plastic in the present litigation,

from: (1) bringing suit or attempting to bring suit for alleged patent infringement against customers or fitters of Plastic (2) circularizing, writing, advertising, or in any manner threatening or harrassing such customers or suppliers of Plastic with charges of infringement, or attempting to force or induce them into taking a license from Solex (3) utilizing, advertising, publicizing, disseminating, stating or implying to the trade or public that all contact lenses of the corneal variety are an infringement of the Tuohy patent, or (4) stating or implying to the trade or public that customers or suppliers of Plastic must defend themselves or consult legal counsel because of alleged patent infringement. The court required that Plastic give security in the sum of $10,000 for payment of any costs or damages as might be incurred or suffered by any party found to be wrongfully enjoined or restrained.

Solex contends that its activities in circulating the trade and Plastic's customers with the materials described were within its rights as owner of the Tuohy patent. Solex relies on cases such as Lucien Lelong, Inc. v. Dana Perfumes, D.C., 138 F.Supp. 575; Heuser v. Federal Trade Commission, 7 Cir., 4 F.2d 632; Mid-Continent Investment Company v. Mercoid Corporation, 7 Cir., 133 F.2d 803; Coats Loaders & Stackers, Inc. v. Henderson, 6 Cir., 233 F.2d 915; Peters Co., Inc. v. MacDonald, 2 Cir., 72 F.2d 670; Alliance Securities Co. v. De Vilbiss Mfg. Co., 6 Cir., 41 F.2d 668; Oil Conservation Engineering Co. v. Brooks Engineering Company, 6 Cir., 52 F.2d 783.

Plastic contends that the conduct of Solex is more nearly analogous to that which was found to justify injunctive relief in Racine Paper Goods Co. v. Dittgen, 7 Cir., 171 F. 631; Commercial Acetylene Co. v. Avery Portable Lighting Co., 7 Cir., 159 F. 935 and Maytag Co. v. Meadows Mfg. Co., 7 Cir., 35 F.2d 403, 410.

In Maytag, Judge Lindley, speaking for this court stated:

"Public policy favors the rule that litigation for the purpose of ascertaining and sustaining alleged rights of a patentee or manufacturer should be brought against the alleged wrongful manufacturer, and that suits against the latter's customers for the same relief should be restrained until the original suit shall be determined."

■ Apart from such general considerations we believe that the facts and circumstances of the instant case are such that it can not be said that the District Court abused its discretion in granting relief. The rule relied upon by Solex is founded upon the good faith of the patent owner warning of infringement. We believe that the conduct of Solex established a lack of good faith. The use Solex made of the California trial judge's "Statistical Facts and Summary" as well as his memorandum opinion, in context with materials and statements which would lead the reader to believe that there had been a final adjudication to the effect that the Tuohy patent covered all types of corneal type lenses, including those supplied by Plastic, constituted a misrepresentation. It was not an attempt by a patent owner to fairly state its rights. It could have been conceived only to mislead the trade, including Plastic's customers.

The conduct of the patent owner in this case serves to distinguish it from the factual situation involved in Minnesota Mining & Mfg. Co. v. Polychrome Corp., 7 Cir., 267 F.2d 772, in which we sustained an order denying a similar interlocutory injunction in a patent infringement action.

It is our conclusion that the record does not establish that the action of the District Court in issuing the preliminary injunction, or in setting the amount of the bond constituted an abuse of discretion.

The order of the District Court is therefore

Affirmed.