**LUCASEY MANUFACTURING CORPORATION, a corporation, Plaintiff,**

**v.**

**ANCHOR PAD INTERNATIONAL, INC., a corporation, Defendant.**

**No. C–88–0088 SAW.**

United States District Court,
N.D. California.

April 26, 1988.

Donald E. Schreiber, Niro, Scavone, Haller & Niro, Ltd., Palo Alto, Cal., Raymond P. Niro, Thomas G. Scavone, Samuel L. Alberstadt, Niro, Scavone, Haller & Niro, Ltd., Chicago, Ill., for plaintiff.

Townsend and Townsend, J. Georg Seka, San Francisco, Cal., Edward J. Darin, Inc.,

Edward J. Darin, Pasadena, Cal., for defendant.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

### I. *Background*

Plaintiff Lucasey Manufacturing Corporation sues defendant Anchor Pad International for declaratory relief that plaintiff's office equipment security devices do not infringe defendant's U.S. Patent No. 3,850,-392 (the "'392" patent).[1] Defendant has cross-claimed for a determination that the '392 patent is valid and infringed by plaintiff's product. Plaintiff has also alleged that defendant's threats of litigation against and communications with plaintiff's distributors and customers constitutes unfair competition.

Plaintiff now seeks a preliminary injunction against what it asserts are acts of unfair competition.

Defendant's '392 patent is for an equipment security device to prevent the ready theft of business machines such as typewriters and computers. The patent is restricted to devices that are adhesively secured to a supporting surface, rather than secured by nuts and bolts which require drilling. Plaintiff also produces office equipment security devices which it refers to as "glue down units."

Defendant has contended since at least 1984 that plaintiff's security devices infringe on the '392 patent. Since that time, defendant has written numerous letters to actual or potential Lucasey distributors and retail customers urging them to honor Anchor Pad's patent rights and warning of the consequences of infringement under the patent laws, including treble damages and award of attorney's fees. The correspondence also informed of Anchor Pad's litigation against Vaultec Industries regarding the '392 patent, which held that patent valid and infringed as against Vaultec's office equipment security device. *See*

---

1. Anchor Pad is the exclusive licensee of the '392 patent, which is held by the patent owner, J. Scott Gassaway.

*Gassaway v. Vaultec Industries, Inc.*, 2 USPQ2d 1433 (1987) *aff'd* 838 F.2d 1222 (Fed.Cir. January 19, 1988).

Defendant, however, never initiated a patent infringement suit against plaintiff. Plaintiff filed this suit for declaratory relief regarding their products and the '392 patent on January 11, 1988. Defendants then counterclaimed for declaratory relief on March 3, 1988. Defendant did sue Business Machine Security, a Lucasey distributor, in the U.S. District Court for the Central District of California for patent infringement after the instant suit was filed. That case, however, has been stayed pending the outcome of this litigation.

Plaintiff now moves for a preliminary injunction to prevent defendant from initiating or threatening suit against Lucasey's customers, dealers, or distributors; from communicating with them about present or past litigation regarding the '392 patent; and from threatening them regarding the purchase or sale of Lucasey products.

## II. Standards for Preliminary Injunction.

A party seeking a preliminary injunction must fulfill one of two standards, described in the Ninth Circuit as "traditional" and "alternative." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir.1987). Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of hardships favors the moving party; and (4) the public interest favors granting relief. *Id.* Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions exist and the balance of hardships tips sharply in its favor. This latter formulation represents two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir.1985).

## III. Application to the Instant Case.

### A. Irreparable Injury

Irreparable injury is required for a grant of preliminary relief under any formulation of test. *Id.* Plaintiff here claims two types of injury: (1) lost sales of Lucasey products and (2) lost reputation, competitiveness, and goodwill as a result of defendant's continued allegations of patent infringement and threats of litigation. Declaration of William Boscacci, March 31, 1988, Exhibit F to Memorandum in Support of Preliminary Injunction ["Memorandum"].

 It is clear that mere financial injury does not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation. *Sampson v. Murray*, 415 U.S. 61, 89–90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *Goldie's Bookstore v. Superior Court of the State of California*, 739 F.2d 466, 471 (9th Cir. 1984). Here, plaintiff's lost sales, if any, can be compensated after further proceedings on the merits. A preliminary injunction is not necessary to remedy this harm.

 Lost reputation and goodwill can, if properly shown, constitute irreparable injury. *Oakland Tribune*, 762 F.2d at 1377. Lucasey's customers are clearly concerned about the allegations that the Lucasey security device infringes on defendant's patent. Boscacci Declaration at ¶¶ 6–8; Letter from the Massachusetts Higher Education Consortium, March 22, 1988, Memorandum Exhibit E. Defendant has communicated its allegations widely, with the issuance of at least forty letters and a press release. Declaration of Samuel L. Alberstadt, April 18, 1988 at ¶ 2; Plaintiff's Reply Brief, Exhibit A. Continued communications from the defendant certainly have a significant potential to affect plaintiff's established reputation and goodwill.

Plaintiff has established the clear possibility of irreparable injury.

### B. Likelihood of Success on the Merits.

 A patentee may notify a competitor's customers of the pendency of an in-

fringement suit and warn them of similar actions, if the patentee acts in good faith. *See, e.g., Virtue v. Creamery Package Manufacturing Company,* 227 U.S. 8, 33 S.Ct. 202, 57 L.Ed. 393 (1913); *Celotex Co. v. Insulite Co.,* 39 F.2d 213 (D.Mn.1930); *Chromium Industries v. Mirror Polishing & Plating,* 448 F.Supp. 544 (N.D.Ill.1978). Infringement suits cannot be threatened in bad faith for the purpose of inhibiting customer purchases and injuring the competitor's business. *Commercial Acetylene Co. v. Avery Portable L. Co.,* 152 F. 642, 645 (E.D.Wisc.1906); *Maytag Co. v. Meadows Mfg. Co.,* 35 F.2d 403, 408 (7th Cir.1929). Public policy also favors litigation of patent rights against the alleged wrongful manufacturer and restraint of suits against customers for the same relief until the original suit is determined. *Maytag,* 35 F.2d at 410.

To be in good faith, the communications to the customer must not contain any misstatements or other language which is unsupported by the allegations of the complaint in the pending infringement action. *Chromium Industries,* 448 F.Supp. at 559; *Celotex Co. v. Insulite Co.,* 39 F.2d at 217–18. Good faith is presumed from proof that the patentee owned the patent and believed it valid at the time of the communications. *Id.* It can be negated, however, by proof that the patentee failed to bring the threatened infringement action against its competitor within a reasonable time after its warnings to rival customers. *Id.* Claims of infringement must also be made with accuracy, so that they may be substantiated and verified by the alleged infringer. *Lucien LeLong, Inc. v. Dana Perfumes,* 138 F.Supp. 575, 579 (N.D.Ill. 1955).

In the instant case, Anchor Pad claims that all of its communications "to the trade" were factual comments concerning the consequences of infringement and the results of the prior *Vaultec* litigation, which were made in good faith. Declaration of Edward J. Darin, April 13, 1988. This contention is belied by several facts. First, Anchor Pad never initiated a patent infringement suit against Lucasey, although it had been complaining of Luca-

sey's actions since at least 1984. *See* Memorandum Exhibit H. The only suit initiated by Anchor Pad was against one of Lucasey's distributors, and was filed after the instant declaratory relief action had been initiated.

■ Instead of filing suit against the manufacturer, Anchor Pad sent numerous letters to Lucasey's distributors and customer. These letters did not specify how Lucasey products infringed the '392 patent. Rather, they raised broad allegations of patent infringement and threatened possible litigation. *See* Memorandum Exhibit H. These letters also referred to the *Vaultec* litigation, without explaining that the claims against Lucasey had not yet been determined by the courts, or, indeed, that suit had not been filed against Lucasey. Rather, the letters implied that the *Vaultec* litigation had established the validity of the '392 patent against Lucasey. *See Solex Laboratories, Inc. v. Plastic Contact Lens Co.,* 268 F.2d 637, 641 (7th Cir.1959).

The failure of Anchor Pad to file suit combined with the imprecise and misleading nature of the letters raises a strong inference of bad faith on the part of Anchor Pad. As such, plaintiff has made a showing of probable success on the merits for the purposes of obtaining preliminary relief.

### C. Balance of Hardships.

■ Lucasey faces the irreparable loss of reputation and goodwill from Anchor Pad's communications to the trade. Anchor Pad's charges of patent infringement have been widely circulated. It is difficult for Lucasey to respond to the allegations against them, particularly as it is uncertain to whom the communications have been directed. The only harm which Anchor Pad faces from an injunction is monetary damages from continued patent infringement, which can be compensated after a trial on the merits. While recovery of damages for past infringement of a patent does require notice to the alleged infringer, notice of the '392 patent has been given both by filing of this lawsuit and Anchor Pad's

compliance with the statutory marking provision. *See* 35 U.S.C. § 287; Lucasey Reply Brief, Exhibit D.

The balance of hardships thus tips sharply towards the plaintiff Lucasey in this action.

### D. Public Interest.

█ Finally, the public interest is clearly served by enjoining the initiation of other lawsuits on this matter and the dissemination of misleading communications to the trade. Litigation of the underlying claim of patent infringement should proceed apace without any further, ancillary distractions. The public interest is also served by litigating patent infringement claims against the manufacturer before initiating other actions against distributors and customers. *Maytag,* 35 F.2d at 409–10.

Plaintiff has satisfied the standards for issuance of preliminary relief through a showing of probable success on the merits, a balance of hardships sharply in its favor, the possibility of irreparable injury, and the public interest in favor of granting relief.

The foregoing constitute the Findings of Fact and Conclusions of Law upon which the preliminary injunction has this day been rendered.

### IV. *Injunction Bond.*

█ Pursuant to Federal Rule of Civil Procedure 65(c), no preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper. As Anchor Pad's possible injuries as a result of being wrongfully enjoined are limited to damages from further patent infringement, which can be compensated after a trial on the merits, the Court finds that security in the sum of $10,000.00 will be adequate.

Accordingly,

IT IS HEREBY ORDERED that:

(1) plaintiff Lucasey's motion for a preliminary injunction is granted;

(2) defendant Anchor Pad International is restrained from:

(a) threatening to initiate, expressly or by implication, any legal action in this or any other court against Lucasey Manufacturing Corporation, or its customers, dealers, or distributors, or anyone with whom Lucasey Manufacturing Corporation has or is likely to have a prospective business relationship, for alleged infringement of U.S. Patent No. 3,850,392;

(b) from communicating to any such person in a manner that expressly or by implication threatens such parties regarding their purchase or sale of Lucasey products;

(3) this injunctive order shall not issue until plaintiff has posted security in the amount of $10,000.00, cash or corporate surety, with the Clerk of this Court for the payment of such costs and damages as may be incurred by any party to this action who is found to have been wrongfully enjoined or restrained.

(4) this Injunction is binding on Anchor Pad International, its officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise;

(5) no person who has notice of this Injunction shall fail to comply with the letter and spirit hereof nor shall any person subvert the letter or spirit hereof by any sham, indirection, or other artifice;

(6) the Court retains jurisdiction to modify this injunction at any time and from time to time on its own motion or upon the motion of any party in the interest of effectuating its intendments or in the interest of furthering the ends of justice under all applicable law.